In the

# United States Court of Appeals
## For the Seventh Circuit

No. 00-4276

PROMATEK INDUSTRIES, LTD.,

*Plaintiff-Appellee*,

*v.*

EQUITRAC CORPORATION,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 4999—**Milton I. Shadur**, *Judge.*

ARGUED MAY 22, 2002—DECIDED AUGUST 13, 2002

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This appeal concerns the propriety of a preliminary injunction in which one competitor, Promatek, prevailed against another, Equitrac. The preliminary injunction was issued without a hearing and Equitrac had to place language on its web page to remedy violations of the Lanham Act. Equitrac now appeals that order and because the district court did not abuse its discretion, we affirm.

## I. BACKGROUND

Promatek and Equitrac are competitors in selling cost-recovery equipment. Equitrac's marketing department ad-

vised its web designer that certain words and phrases should be used as metatags for Equitrac's website.[1] In response, the web designer placed the term "Copitrack" in the contents of Equitrac's website as a metatag. Equitrac used the term as a metatag because it provides maintenance and service on Copitrak equipment, a product used in the cost-recovery business.[2] Promatek holds the trademark for Copitrak, and once it learned of Equitrac's use of the term Copitrack in the metatag, it brought suit. After learning of Promatek's suit, Equitrac contacted all of the search engines known to it and requested that they remove any link between the term Copitrack and Equitrac's website. Equitrac also removed the Copitrack metatag from its website.

Not satisfied with Equitrac's remedial measures, Promatek sought a preliminary injunction preventing Equitrac from using the term Copitrack in its website. After receiving materials submitted by both parties, the district

---

[1]      Metatags are HTML [HyperText Markup Language] code intended to describe the contents of the web site. There are different types of metatags, but those of principal concern to us are the "description" and "keyword" metatags. The description metatags are intended to describe the web site; the keyword metatags, at least in theory, contain keywords relating to the contents of the web site. The more often a term appears in the metatags and in the text of the web page, the more likely it is that the web page will be "hit" in a search for that keyword and the higher on the list of "hits" the web page will appear.

*Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999).

[2] The parties agree that Equitrac meant to use the term "Copitrak" as its metatag rather than "Copitrack."

court granted Promatek's motion for preliminary injunction. Under the terms of the injunction, Equitrac was directed to place language on its web page informing consumers that any link between its website and Copitrack was in error:

> If you were directed to this site through the term "Copitrack," that is in error as there is no affiliation between Equitrac and that term. The mark "Copitrak" is a registered trademark of Promatek Industries, Ltd., which can be found at www.promatek.com or www.copitrak.com.

(Equitrac Ex. 1, Prelim. Inj. Order at 5).

Equitrac appeals the issuance of the injunction, arguing that the ordered language will not only inform consumers of its competitor, Promatek, but will encourage people to go to Promatek's website. Promatek counters that without this language, Equitrac will continue to benefit, to Promatek's detriment, from consumer internet searches containing the word Copitrack. We conclude that the district court was correct in finding Promatek would suffer a greater harm than Equitrac if corrective measures were not taken, and we affirm the grant of the preliminary injunction.

## II. ANALYSIS

A party seeking a preliminary injunction is required to demonstrate a likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if the relief is not granted. *Ty, Inc. v. Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001) (citing *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). If the moving party can satisfy these conditions, the court must then consider any irreparable harm an injunction would cause the nonmoving party.

*Ty*, 237 F.3d at 895. Finally, the court must consider any consequences to the public from denying or granting the injunction. *Id.* Sitting as a court of equity, the court then weighs all these factors employing a sliding-scale approach. *Abbott Labs*, 971 F.2d at 12. That is, the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor. *Id.* We review the grant of a preliminary injunction for an abuse of discretion, giving great deference to the district court's weighing of the factors and will reverse only when the district court commits a clear error of fact or law. *Ty*, 237 F.3d at 896.

A.  The District Court Was Correct in Granting the Injunction

1.   Likelihood of success on the merits

Equitrac argues that because there was no likelihood of success on the merits of Promatek's Lanham Act claim, the district court erred in granting the preliminary injunction. In order to prevail under the Lanham Act, 15 U.S.C. § 1125(a), Promatek must establish that Copitrak is a protectable trademark and that Equitrac's use of the term is likely to cause confusion among consumers. *See Ty*, 237 F.3d at 897. Preregistration of Promatek's Copitrak trademark is prima facie evidence of the mark's validity, *see Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 340 (7th Cir. 1998), which Equitrac does not dispute. Therefore, we turn to the issue of whether consumers would be confused by Equitrac's use of Copitrak as a metatag.

In assessing the likelihood of consumer confusion, we consider: (1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers,

(5) the strength of the plaintiff's marks, (6) any evidence of actual confusion, and (7) the defendant's intent to palm off its goods as those of the plaintiff's. *Ty*, 237 F.3d at 897-98. None of these factors are dispositive and the proper weight given to each will vary in each case. *Id.* However, the similarity of the marks, the defendant's intent, and evidence of actual confusion are of particular importance. *Id.*

Given these factors, it is clear that Promatek has a fair likelihood of succeeding on the merits of its Lanham Act claim. Although Promatek has not provided us with evidence regarding the strength of its Copitrak mark or evidence of any actual consumer confusion, the other factors weigh in its favor. First, not only are the marks Copitrack and Copitrak similar, Equitrac admits that it meant to use the correct spelling of Copitrak in its metatag. Second, Equitrac's use of Copitrack refers to Promatek's registered trademark, Copitrak. Additionally, Equitrac and Promatek are direct competitors in the cost-recovery and cost-control equipment and services market. Most importantly, for purposes of this case, however, is the degree of care to be exercised by consumers.

Although Equitrac claims that it did not intend to mislead consumers with respect to Copitrak, the fact remains that there is a strong likelihood of consumer confusion as a result of its use of the Copitrack metatag. The degree of care exercised by consumers could lead to initial interest confusion. Initial interest confusion, which is actionable under the Lanham Act, occurs when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated. *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996).

The Ninth Circuit has dealt with initial interest confusion for websites and metatags and held that placing

a competitor's trademark in a metatag creates a likelihood of confusion. In *Brookfield Communications*, the court found that although consumers are not confused when they reach a competitor's website, there is nevertheless initial interest confusion. 174 F.3d at 1062. This is true in this case, because by Equitrac's placing the term Copitrack in its metatag, consumers are diverted to its website and Equitrac reaps the goodwill Promatek developed in the Copitrak mark. *Id.* That consumers who are misled to Equitrac's website are only briefly confused is of little or no consequence. In fact, "that confusion as to the source of a product or service is eventually dispelled does not eliminate the trademark infringement which has already occurred." *Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 442 n.2 (7th Cir. 1990). What is important is not the duration of the confusion, it is the misappropriation of Promatek's goodwill. Equitrac cannot unring the bell. As the court in *Brookfield* explained, "[u]sing another's trademark in one's metatags is much like posting a sign with another's trademark in front of one's store." *Brookfield*, 174 F.3d at 1064. Customers believing they are entering the first store rather than the second are still likely to mill around before they leave. The same theory is true for websites. Consumers who are directed to Equitrac's webpage are likely to learn more about Equitrac and its products before beginning a new search for Promatek and Copitrak. Therefore, given the likelihood of initial consumer confusion, the district court was correct in finding Promatek could succeed on the merits.

### 2. No adequate remedy at law

A plaintiff seeking a preliminary injunction must also prove that it has no adequate remedy at law and as a result, will suffer irreparable harm if the injunction is not

issued. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Furthermore, it is well settled that injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss. *Abbott Labs*, 971 F.2d at 16.

As has been discussed, Promatek has suffered injury to its consumer goodwill through Equitrac's use of Copitrack as a metatag and would have continued to suffer in the absence of an injunction. This damage would have constituted irreparable harm for which Promatek had no adequate remedy. *See Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997). Because of the difficulty in assessing the damages associated with a loss of goodwill, the district court was correct in finding that Promatek lacked an adequate remedy at law.

### 3.   Balancing of the harms

The final factor we must consider is the balance of harms—the irreparable harm Equitrac will suffer if the injunction is enforced weighed against the irreparable harm Promatek will suffer if it is not. *See Meridian*, 128 F.3d at 1121-22. We must also consider the effect the injunction will have on the public. *Roland*, 749 F.2d at 388. We review a district court's balancing of the harms for an abuse of discretion. *Ty,* 237 F.3d at 902.

In finding that the harm to Promatek as a result of denying the injunction outweighed the harm to Equitrac in granting it, the district court found, and we agree, that without the injunction, Equitrac would continue to attract consumers browsing the web by using Promatek's trademark, thereby acquiring goodwill that belongs to Promatek. In response, Equitrac points out that even though it offers products for sale on its website, it has yet to consummate a sale by this means. (Equitrac Ex. 2 ¶8). Furthermore, Equitrac claims that "consumers of products and

services provided by Equitrac and Promatek are sophisticated business people who are not likely to be confused between Equitrac and Copitrak and are not likely to buy based on a visit to a website." (*Id.* at ¶6).

Although Equitrac claims that the language on its website is harmful because it alerts consumers to Promatek's website, it has not provided any evidence of customers it has lost as a result of the remedial language. Indeed the remedial language on the website is more informative than it is harmful. Equitrac's speculative argument that Promatek may gain a competitive advantage by inclusion of the remedial language is rejected. As to the public interest, because the injunction prevents consumer confusion in the marketplace, the public interest will be served as well. Accordingly, the strong likelihood of consumer confusion weighs strongly in favor of issuing the injunction, and the district court did not abuse its discretion in finding this to be the case.

B.  No evidentiary hearing was needed.

Finally, it was not necessary for the district court to hold a hearing before ruling on the motion for preliminary injunction. An evidentiary hearing is required if the nonmoving party raises genuine issues of material fact in response to a motion for a preliminary injunction. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997). However, the party seeking the evidentiary hearing must demonstrate that it has "and intends to introduce evidence that if believed will so weaken the moving party's case as to affect the judge's decision on whether to issue the injunction." *Id.*

Equitrac claims that the court should not have issued the preliminary injunction without a hearing. Specifically, Equitrac argues that because the court failed to find, and did not receive evidence to contradict, Equitrac's position

that it was entitled to advertise that it was capable of servicing Copitrak equipment, Promatek's motion for a preliminary injunction should have been denied. Equitrac's argument misses the point. What is relevant to the preliminary injunction is not that Equitrac may advertise that it is capable of servicing Copitrak. Equitrac is free to do so; it is also free to place comparison claims on its website, or include press releases involving the litigation between Equitrac and Promatek. *See Brookfield*, 174 F.3d at 1065-66. It is Equitrac's use of the term Copitrack in its metatag that is a prohibited practice because of its potential for customer confusion. *See Brookfield*, 174 F.3d at 1066. Because Equitrac failed to demonstrate that its evidence would weaken Promatek's case, an evidentiary hearing was not necessary.

## III. CONCLUSION

The district court did not abuse its discretion in issuing the preliminary injunction. We therefore AFFIRM.

A true Copy:

   Teste:

            _____
            *Clerk of the United States Court of*
            *Appeals for the Seventh Circuit*