# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2023

Lyle W. Cayce
Clerk

_____

No. 22-40376

_____

Whirlpool Corporation; Whirlpool Properties,
Incorporated,

*Plaintiffs—Appellees*,

*versus*

Shenzhen Sanlida Electrical Technology Company,
Limited; Shenzhen Avoga Technology Company,
Limited,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:22-CV-27

_____

Before Barksdale, Southwick, and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Plaintiffs-Appellees Whirlpool Corporation and Whirlpool Properties, Inc., (collectively, "Whirlpool") own various trademarks associated with the iconic KitchenAid stand mixer, which they manufacture and sell. Recently, Defendants-Appellants Shenzhen Sanlida Electrical Technology Co., Ltd. and Shenzhen Avoga Technology Co., Ltd. (collectively, "Shenzhen") introduced their own stand mixers into the market, primarily through

No. 22-40376

online channels. Whirlpool promptly filed a complaint asserting federal- and state-law claims for trademark and trade dress infringement along with a motion for a preliminary injunction to stop the sale of the allegedly infringing mixers. After a hearing at which both parties were present, the district court granted the injunction. In addition to its appeal, Shenzhen sought an emergency stay pending appeal. After granting an initial administrative stay, we denied that motion. And now, after considering the appeal on the merits, we AFFIRM.

**I.**

For decades, the KitchenAid stand mixer, with its signature bullet-shaped head, sloped neck, and sleek design, has been a staple on wedding registries and the crown jewel in a home cook's kitchen. Indeed, in 1992, the U.S. Patent and Trademark Office ("PTO") granted Whirlpool (which owns the KitchenAid brand) registration of the three-dimensional KitchenAid mixer design.[1] This design has been the subject of millions of dollars in advertising spending across all media channels, appears prominently in various cooking shows and is used by celebrity chefs, and has received numerous accolades and awards.

Shenzhen, a China-based manufacturer, also manufactures and sells stand mixers under the brand names "COOKLEE" and "PHISINIC."

---

[1] Whirlpool has also registered a trademark as to the two-dimensional silhouette.

No. 22-40376

Recently, Shenzhen launched a new stand mixer model that is the subject of this lawsuit.

  

**KitchenAid Stand Mixer**     **COOKLEE Stand Mixer**     **PHISINIC Stand Mixer**

Accordingly, on January 31, 2022, Whirlpool filed a complaint against Shenzhen for claims of trademark infringement and dilution, trade dress infringement, and unfair competition under federal and state law. That same day, Whirlpool filed a motion for a preliminary injunction prohibiting Shenzhen from selling, distributing, advertising, or promoting the allegedly infringing mixers.

On March 14, 2022, Whirlpool requested a preliminary injunction hearing. In this motion, Whirlpool stated that Shenzhen had received actual notice of the pending motion for a preliminary injunction, claiming that (1) both Shenzhen companies' legal representatives had accepted and signed for the documents, (2) these same legal representatives had been notified via text message to their confirmed cell phones, and (3) emails containing the summons, complaint, and motion for a preliminary injunction had been sent to the companies' active email addresses. The motion was granted, and a hearing before a magistrate judge was scheduled for April 19, 2022.

Counsel for both Whirlpool and Shenzhen attended the preliminary injunction hearing. At the hearing, Shenzhen, which did not dispute that they had received notice of the proceeding, argued that the preliminary injunction should not be granted in the absence of service of process. Additionally,

No. 22-40376

Shenzhen contended that the preliminary injunction should be denied because Whirlpool's trademarks are invalid because they are functional, and there is no likelihood of confusion between KitchenAid and Shenzhen's stand mixers. The magistrate judge stated that he would take these arguments under consideration, and then, later that day, issued a report and recommendation in favor of granting the preliminary injunction.

On June 14, 2022, over objections from Shenzhen, the district court adopted the magistrate judge's report and recommendation and issued a preliminary injunction. Shenzhen immediately appealed. The initial preliminary injunction order required Shenzhen not to just immediately cease, *inter alia*, importing, selling, promoting, and distributing their mixers, but also to "recall and destroy and provide proof to the Court of recall and destruction" of the allegedly infringing mixers.

Shenzhen filed an emergency motion to stay this order in the district court. In addition to re-raising arguments as to service of process, the validity of the trademark, and the likelihood of confusion, Shenzhen contended that the district court erred in ordering the allegedly infringing mixers destroyed, and in failing to order Whirlpool to post bond in connection with the preliminary injunction pursuant to Federal Rule of Civil Procedure 65(c). The magistrate judge, after a more detailed analysis as to factors justifying a preliminary injunction, recommended denying the motion to stay, although he also recommended that the injunction be modified to require Shenzhen only to recall and hold (rather than recall and destroy) the allegedly infringing mixers and that Whirlpool be ordered to post a bond in the amount of $10,000. On August 12, 2022, the district court, again over Shenzhen's objection, adopted this report and recommendation.

On September 2, 2022, Shenzhen filed an opposed emergency motion for a stay of the preliminary injunction pending appeal in our court. On

4

September 12, our court granted an administrative stay. On October 12, however, our court ordered that the administrative stay be lifted and Shenzhen's opposed motion for a stay pending appeal be denied. Accordingly, the district court's preliminary injunction has remained in effect while this appeal was pending. We now address the merits of that appeal.

## II.

## A.

First, Shenzhen contends that the district court lacked the power to enter a preliminary injunction because, in the absence of either completed service of process under the Hague Convention or a voluntary appearance, the district court had not yet acquired personal jurisdiction over it. Yet Federal Rule of Civil Procedure 65 states that a court "may issue a preliminary injunction only on *notice* to the adverse party." FED. R. CIV. P. 65(a)(1) (emphasis added). In other words, as we stated in *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, "Rule 65(a) does not require service of process," but rather requires "notice to the adverse party." 569 F.2d 300, 302 (5th Cir. 1978). Here, there is no dispute that Shenzhen received sufficient notice of the motion for a preliminary injunction—indeed, Shenzhen appeared at and participated in the preliminary injunction hearing. *See Harris Cnty. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 325 (5th Cir. 1999) (explaining that Rule 65's "notice requirement necessarily requires that the party opposing the preliminary injunction has the opportunity to be heard and to present evidence").

Shenzhen does not address *Corrigan*, but instead relies on *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana* for the proposition that Rule 65 merely prescribes the means for issuing an injunction and has no bearing on the court's jurisdiction to exercise such

No. 22-40376

power. 762 F.2d 464, 470 (5th Cir. 1985). Specifically, Shenzhen reads *Enterprise* to require that a district court must have "both subject matter jurisdiction and in personam jurisdiction over the party against whom the injunction runs," which, where the party is the defendant, requires either a voluntary appearance or effective service of process. *Id.* (internal quotation marks and citation omitted).

In *Enterprise*, one of the defendants (the official state-operated oil company of the Republic of Ecuador) challenged the district court's ability to exercise personal jurisdiction over it pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605. *Enterprise*, 762 F.2d at 465, 470. In other words, the defendant in *Enterprise* argued that the district court would *never* have personal jurisdiction over it. In this scenario, we found it error for the district court to "postpone[] any consideration of the issue of personal jurisdiction" before issuing the preliminary injunction. *Id.* at 471. We explained, "Where a challenge to jurisdiction is interposed on an application for a preliminary injunction[,] '[t]he plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'" *Id.* (quoting *Visual Scis., Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 59 (2d Cir. 1981)).

But here, and unlike the defendant in *Enterprise*, Shenzhen does not dispute that once service is effectuated, personal jurisdiction will exist. Instead of arguing that the district court will *never* have personal jurisdiction, Shenzhen contends that the district court simply had to wait until service of process was perfected before ordering any, even emergency, relief. Yet, because "formal service of process under the Hague Convention . . . can take months," adopting Shenzhen's position could result in the "unfortunate effect of immunizing most foreign defendants from needed emergency injunctive relief." *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d

827, 842 (7th Cir. 2012). And, as already noted, Shenzhen's position directly contradicts both the plain text of Rule 65 and our precedent as established in *Corrigan*. Accordingly, we find that the district court did not err in concluding that a preliminary injunction requires only notice, not perfected service of process.

**B.**

Additionally, Shenzhen contends that the district court abused its discretion in granting the preliminary injunction. For issuance of the preliminary injunction to be proper, Whirlpool had to show:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006) (citation omitted). We review "the grant or denial of a preliminary injunction for abuse of discretion, with any underlying legal determinations reviewed *de novo* and factual findings for clear error." *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021).

**i.**

We begin with the first factor—likelihood of success on the merits. To obtain an injunction for a claim of trademark infringement, a party must show that it (1) possesses a valid trademark and (2) that the defendant's products create a likelihood of confusion as to source, affiliation, or sponsorship. *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (citing *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012)).

**a.**

Here, Whirlpool has a registered design mark as to the KitchenAid mixer, specifically its exterior styling. "[P]roof of the registration of a mark with the PTO constitutes prima facie evidence that the mark is valid," although "[t]his presumption of validity may be rebutted." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) (citations omitted).[2] Nonetheless, Shenzhen contends that that this mark is invalid as functional because the parts of the mixer (which Shenzhen describes as "a mixer head, an L-shaped pedestal[] including a base portion and an upstanding support arm") are required for the mixer to work.

"The Supreme Court has recognized two tests for determining functionality." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 485 (5th Cir. 2008). First, the Court has held that "'a product feature is functional,' and cannot serve as a trademark,

---

[2] To the extent that Whirlpool's claims are predicated on unregistered trade dress rights in the shape of the KitchenAid stand mixer, "[i]t is well established that trade dress can be protected under federal law" and that the design of a product "may acquire a distinctiveness which serves to identify the product with its manufacturer or source." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001); *see also Amazing Spaces, Inc.*, 608 F.3d at 251 ("Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." (citation omitted)). When this occurs, much like a trademark, the trade dress "may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods." *TrafFix*, 532 U.S. at 28. We apply the same analysis as to a claim for trade dress infringement as we do to a claim for trademark infringement. *See Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989) (describing the two-step analysis to resolve a claim for trade dress infringement, noting that "[t]he first question is whether the product's trade dress qualifies for protection" and that the second question is whether that dress has been infringed, which occurs when there is a likelihood of confusion between the competing products).

'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)). Here, nothing in the record demonstrates that the exterior styling of the mixer is "the reason the device works."[3] *See Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002) (quoting *TrafFix*, 532 U.S. at 34). Moreover, there are numerous competing products in the market, including some produced by Shenzhen. Notably, there is no showing in the record that the specific shape of the mixer head or slope of the stand otherwise affects the cost, quality, or function of these competitors as would be required to demonstrate functionality.

The second test for functionality looks less to use, and more to competition, stating that "a functional feature is one the exclusive use of which would put competitors at a significant non-reputation-related disadvantage." *Smack Apparel*, 550 F.3d at 486 (citation omitted). But again, the presence of competing products with other design motifs cuts against this argument. And, critically, these other designs are "equally usable" even if potentially less desirable or aesthetically pleasing. *See Qualitex*, 514 U.S. at 166. KitchenAid's design mark and trade dress cover "ornamental, incidental, or arbitrary aspect[s] of the device," and are accordingly not functional. *See TrafFix*, 532 U.S. at 30.

―――――――――――――――――――

[3] Shenzhen's reliance on a (now expired) 1939 utility patent detailing the internal mechanics of the mixer and a 2018 utility patent for a damper mechanism on the stand to demonstrate functionality is misplaced. Although a "utility patent is strong evidence that the features therein claimed are functional," *TrafFix*, 532 U.S. at 30, the mark and trade dress at issue concern the external decorative features, not the claim elements contained within the patent.

No. 22-40376

In sum, we do not find clear error with the district court's finding that KitchenAid's registered mark (or the associated trade dress), which covers the exterior design of the mixer, is not functional and is therefore a valid mark, satisfying the first requirement.

**b.**

Shenzhen also contends that the district court erred in granting the preliminary injunction because, in Shenzhen's view, there is no likelihood of confusion between its products and the KitchenAid mixer, the second factor. When assessing the likelihood of confusion, we consider the following non-exhaustive elements, also known as the "digits of confusion":

> (1) the type of mark infringed, (2) the similarity between the marks, (3) the similarity of the products, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) evidence of actual confusion, and (8) the degree of care exercised by potential purchasers.

*Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020) (citation omitted). "A finding of a likelihood of confusion need not be supported by a majority of the digits," and district courts may weigh the digits on a case-by-case basis, "depending on the particular facts and circumstances involved." *Id.* (cleaned up).

Again, we review the district court's factual determination as to the likelihood of confusion for clear error.[4] *Rolex Watch USA, Inc. v. Meece*, 158

---

[4] Neither the initial report and recommendation nor the first preliminary injunction order contained an analysis as to the "digits of confusion." Although the failure to give due consideration to the "digits of confusion" could have been in error, *see Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 831 (5th Cir. 1998) ("The district court erred by failing to

F.3d 816, 829 (5th Cir. 1998). As noted above, the allegedly infringing mixers have similar slopes and geometries, are sold to similar purchasers (namely, they are sold for personal, rather than commercial, use), and are marketed in the same or similar channels (specifically, online retailers). It is true, as Shenzhen notes, that other factors may support that there is no confusion—for instance, Shenzhen's mixers have other distinguishable features, like additional nobs or visible branding. Nevertheless, that there is a debate as to how to weigh the elements is not enough for us to find clear error in the district court's determination that this factor ultimately went in Whirlpool's favor.

## ii.

Having addressed the question of Whirlpool's likelihood of success on the merits, we briefly discuss the remaining three factors—the threat of irreparable injury, the balance of harms, and the public interest.[5]

Under the Lanham Act, a plaintiff seeking a preliminary injunction against infringement "shall be entitled to a rebuttable presumption of

_____

consider and weigh all of the digits of confusion."), the second report and recommendation (addressing Shenzhen's motion to stay the preliminary injunction) explicitly addressed several of these factors, specifically the nature of the marks, the similarities between the mixers, and the overlap between the markets for the products, and found that they all supported the conclusion that there is a likelihood of confusion.

[5] Although Shenzhen did not challenge these elements as to the original report and recommendation, we note that it did raise these issues in its motion to stay the preliminary injunction. Because the report and recommendation (later adopted by the district court) as to the motion to stay addressed these objections before modifying the preliminary injunction to the current operative order, we find it appropriate to address these challenges on appeal. We do not find that Shenzhen is "raising [these arguments] for the first time on appeal" such that it is forfeited. *Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 402 (5th Cir. 2022) (citation omitted).

irreparable harm . . . upon a finding of likelihood of success on the merits." 15 U.S.C. § 1116; *see also Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 183 (3d Cir. 2022) (explaining how the Trademark Modernization Act of 2020 created a rebuttable presumption of irreparable harm for plaintiffs who have shown a likelihood of success on the merits of their infringement claim). In attempting to rebut this presumption, Shenzhen alleges, for the first time on appeal and without any factual support, that their products and KitchenAid's mixers have coexisted in the market for years and that Whirlpool's delay in bringing an enforcement action necessarily shows the lack of any such harm. Even assuming this argument is properly raised, we do not find it convincing, let alone enough for us to find that the district court abused its discretion in finding that the second factor weighed in favor of Whirlpool.

We similarly find no abuse of discretion as to the district court's finding on the balance of harms. Shenzhen lists the harms resulting from the preliminary injunction as primarily the loss of the use of their own markets to sell their own products, resulting in "loss of market shares, immediate and almost complete loss of revenue stream from the sale of products, interruption of the normal course of business . . . and loss of invested capital." Such harms are pecuniary in nature, and thus presumptively reparable. *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages."). Accordingly, the balance of harms weighs in favor of Whirlpool and its presumption of irreparable harm.

Finally, although we recognize that the public has an interest in encouraging commercial competition, the public also has an interest in the effective enforcement of our trademark laws. *See Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) ("Finally, the public interest

is served by the injunction because enforcement of the trademark laws prevents consumer confusion." (citation omitted)).

Therefore, the district court did not abuse its discretion in granting the preliminary injunction.

## III.

For the foregoing reasons, we AFFIRM.