In the

# United States Court of Appeals
## for the Seventh Circuit

———————————

No. 23-2568

D.P., a minor, by her mother and next friend, A.B.,[1]

*Plaintiff-Appellee,*

*v.*

MUKWONAGO AREA SCHOOL DISTRICT and JOSEPH KOCH,

*Defendants-Appellants.*

———————————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:23-cv-00876 — **Lynn Adelman**, *Judge.*

———————————

ARGUED FEBRUARY 15, 2024 — DECIDED JUNE 12, 2025

———————————

Before SYKES, *Chief Judge,* and EASTERBROOK and KIRSCH, *Circuit Judges.*

SYKES, *Chief Judge.* D.P. is a transgender girl attending middle school in the Mukwonago Area School District in southeastern

———————————

[1] The parties referred to the plaintiffs as Jane Doe #1 and #2. In accordance with Rule 5.2(a)(3) of the Federal Rules of Civil Procedure, we refer to the minor plaintiff by her initials and do the same for her mother, who brings this suit on her behalf.

Wisconsin. With her mother, she challenges a new district policy that requires her to use the boys' bathroom and locker room or a gender-neutral alternative. She alleges that the policy violates her rights under Title IX of the Education Amendments of 1972 and the Fourteenth Amendment's Equal Protection Clause.

Along with their complaint, D.P. and her mother filed an emergency motion for a temporary restraining order and a preliminary injunction barring enforcement of the policy during the litigation. They argued that the policy is plainly unlawful under binding circuit precedent—namely *Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034 (7th Cir. 2017). The school district responded to the motion four days later. Two days after receiving the response, the judge entered a temporary restraining order prohibiting district officials from enforcing the new policy against D.P. The judge also advised the parties that he would address the motion for a preliminary injunction soon.

And he did. Five days after issuing the temporary order and without holding a hearing, the judge entered an order converting the restraining order to a preliminary injunction barring the school district from enforcing the policy against D.P. during the pendency of the suit. He agreed with the plaintiffs that the case is squarely controlled by *Whitaker*.

The school district appealed, focusing primarily on the judge's decision to forgo a hearing before issuing the preliminary injunction. The school district also urges us to overrule *Whitaker* and a more recent case—*A.C. v. Metropolitan School District of Martinsville*, 75 F.4th 760 (7th Cir. 2023)—reaffirming *Whitaker*.

We reject these arguments and affirm. An evidentiary hearing is not always required prior to the issuance of a preliminary injunction. Though the procedural rules contemplate a hearing, *see*

Fed. R. Civ. P. 65(a)(2), the court may proceed without one if the opponent's response does not suggest the existence of factual disputes that might affect the resolution of the motion. Here the school district neither requested a hearing nor identified material factual issues in need of resolution, so the judge reasonably dispensed with a hearing and moved directly to decision. On the merits, we decline to revisit *Whitaker* and *Martinsville*.

## I. Background

D.P., a transgender girl, attends middle school in the Mukwonago Area School District. Before the district adopted the new policy at the center of this case, she used the girls' bathroom at school without incident.

In April 2023, near the end of D.P.'s fifth-grade year, school officials began receiving calls and emails from parents raising concerns about her use of the girls' bathroom. In response the school district began considering a new policy that would require transgender students to use a designated transgender bathroom or a single-occupancy, gender-neutral alternative. D.P.'s mother objected that such a policy would single out and stigmatize her daughter. After a public hearing on the issue at a school-board meeting on May 22, the school district sent an email to parents and students on May 23 announcing that the board would develop a policy on the issue over the summer. But in the meantime, it "affirm[ed]" its position that "students should use the locker rooms and bathrooms of their sex at birth."

During the summer break, D.P. was enrolled in a summer-school program set to begin on June 19. Three days before the start of summer classes, her mother received an email from the school superintendent reiterating the district's position regarding bathroom use. The email stated that D.P. could use the boys' bathroom or a gender-neutral alternative but not the girls'

bathroom. Once summer school began, school officials monitored D.P.'s bathroom use. When she used the girls' bathroom, they removed her from class and contacted her mother.

On June 26 the school board reaffirmed the position it had taken in the May 23 email and adopted a formal policy—known as Policy 5514—requiring students to "use restroom and locker room facilities on District property and at District-sponsored events according to each student's original sex assigned at birth." The policy permits exceptions: it states that "requests for an exception or accommodation to this policy shall be considered on a case-by-case basis in consultation with the student, the student's parents," and educational and mental-health professionals as appropriate.

The next day, June 27, attorneys for D.P. and her mother wrote to Superintendent Joseph Koch objecting that the new policy violated D.P.'s rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and the Equal Protection Clause. Citing our decision in *Whitaker*, the lawyers explained that their clients were prepared to file a federal lawsuit against the district seeking temporary and permanent injunctive relief, damages, and attorneys' fees. To resolve the dispute without litigation, they demanded that the school district immediately rescind the new policy and permit D.P. and other transgender students to use bathrooms and locker rooms corresponding to their gender identity. The letter requested a response within 24 hours.

The school district responded the next day by letter from its counsel stating that the district was providing D.P. with "support and accommodations," such as "support from a trusted adult" and "the option to use the boys' restroom or a gender-neutral restroom." The letter also explained that the district was "not

summarily rejecting" the demands in the June 27 letter but that it wanted to "first engage with the family and carry out the processes outlined in its policy."

Two days later D.P. and her mother filed suit challenging the new policy. The date was June 30—the Friday before the start of an unofficial four-day weekend associated with the July Fourth holiday, which fell on a Tuesday that year. The complaint alleged claims under Title IX and the Equal Protection Clause and named the school district and Superintendent Koch as defendants. (Koch was sued only in his official capacity, which is the same as suing the school district itself, *see Bridges v. Dart*, 950 F.3d 476, 478 n.1 (7th Cir. 2020), so we say no more about him.)

D.P. and her mother also filed an emergency motion seeking a temporary restraining order and a preliminary injunction, with a supporting brief and exhibits reflecting the development of the new policy and the correspondence between the parties. They notified the school district of the suit and the motion via email that same day, attaching copies of all the pleadings.

The school district filed a response to the motion on July 4 but made no evidentiary submission of its own and neither requested an evidentiary hearing nor disputed the evidence submitted by the plaintiffs. D.P. and her mother filed a reply brief the next day.

On July 6 the judge issued the requested temporary restraining order barring the school district from denying D.P. access to the girls' bathroom or imposing discipline if she used those facilities. The judge reasoned that D.P.'s case is materially identical to *Whitaker*. He also informed the parties that he was reviewing the motion for a preliminary injunction and would "issue a separate, more detailed opinion on the motion soon."

Five days later—on July 11—and without holding an evidentiary hearing, the judge converted the temporary restraining

order to a preliminary injunction prohibiting the district from enforcing the policy during the pendency of the case; he also issued a standalone injunction order specifying the terms of the injunction as required by Rule 65. In his decision the judge noted that the plaintiffs had supported their motion with a brief, a declaration, and various exhibits related to the new policy and that the school district had filed a response but submitted no additional evidence, relying instead on the plaintiffs' exhibits.

Expanding on the reasoning in his temporary order, the judge concluded that D.P.'s claims were highly likely to succeed under *Whitaker*, which he viewed as indistinguishable from this case. He also determined that D.P. would suffer irreparable harm without preliminary relief and that the balance of harms weighed strongly in her favor. Finally, he held that the public interest also favored a preliminary injunction enjoining enforcement of the policy for the duration of the litigation.

Three weeks later we reaffirmed *Whitaker* in *Martinsville*, 75 F.4th at 771. This appeal followed.

## II. Discussion

The school district asks us to vacate the preliminary injunction and permit it to enforce Policy 5514 while D.P.'s suit proceeds. To win a preliminary injunction, D.P. had the burden to establish that she is likely to succeed on the merits of her suit and would suffer irreparable harm in the absence of interim relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In addition to these threshold requirements, she also had to demonstrate that the balance of equitable considerations tipped in her favor and that a preliminary injunction would be consistent with the public interest. *Id.*

The district judge applied this familiar framework. And although a preliminary injunction is an extraordinary remedy, our

review of his decision is mostly deferential: we review factual findings for clear error, legal conclusions de novo, and equitable balancing for abuse of discretion. *Martinsville*, 75 F.4th at 767.

This appeal centers on a claim of procedural error: the school district argues that the judge was required to hold an evidentiary hearing before ruling on the motion for a preliminary injunction. On the merits, the school district maintains that *Whitaker* and *Martinsville* are distinguishable from this case, or alternatively, should be overruled. Finally, in an argument raised for the first time in its reply brief, the district contends that the judge jumped the gun by ruling on the motion for a preliminary injunction before the plaintiffs filed proof of service of process.

We begin with this last contention and reject it for several reasons. First, it comes too late. We have repeatedly held that arguments raised for the first time in a reply brief are waived. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 636 (7th Cir. 2018). Waiver aside, the argument is meritless. Rule 65 provides that a preliminary injunction may issue "only on notice to the adverse party." FED. R. CIV. P. 65(a)(1). By its terms, the rule requires *notice*; formal service of process is not a prerequisite. *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012) ("Rule 65 allows emergency injunctive relief before service of process …."); *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536, 543 (5th Cir. 2023) ("[A] preliminary injunction requires only notice, not perfected service of process."). FED. R. CIV. P. 65(d)(2).

Here the plaintiffs provided immediate notice of the motion by sending the complaint, the motion, and all other pleadings to the school district's counsel by email on June 30, the same day the suit was filed. The school district acknowledges that it had actual

notice of the motion, as indeed it must. After all, it filed a 15-page brief in response four days later.

Still, the school district argues that because formal service of process was not accomplished and certified until July 17—six days *after* the judge entered the preliminary injunction—the judge could not have been certain that Rule 65's notice requirement had been satisfied. This is an odd argument. There is no possible uncertainty here. The school district's response brief repeatedly cited the plaintiffs' motion and discussed the supporting evidence the plaintiffs had submitted with it. And the judge noted the procedural history—including of course the school district's response—in his decision and order. The school district's argument about notice and service of process is both waived and meritless.

We turn now to the school district's primary argument on appeal, which concerns the judge's decision to forgo a hearing before granting D.P.'s motion for a preliminary injunction. Rule 65 contemplates an evidentiary hearing before the issuance of a preliminary injunction. Subsection (a)(2) of the rule provides:

> Before or after beginning *the hearing on a motion for a preliminary injunction*, the court may advance the trial on the merits and consolidate it with *the hearing*. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial.

FED. R. CIV. P. 65(a)(2) (emphases added).

We have said that "[a]n evidentiary hearing is required if the nonmoving party raises genuine issues of material fact in response to a motion for a preliminary injunction." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002). On the

other hand, we have also explained that the court "need not con-
duct an evidentiary hearing unless one is called for as a result of
a fact issue created by the response to a motion for a preliminary
injunction." *Dexia Crédit Loc. v. Rogan*, 602 F.3d 879, 884 (7th Cir.
2010). The decision to hold or forgo an evidentiary hearing is a
discretionary judgment reviewable only for abuse of discretion.
*Medeco Sec. Locks, Inc. v. Swiderek*, 680 F.2d 37, 38–39 (7th Cir.
1981).

The district judge did not abuse his discretion by skipping an
evidentiary hearing in this case. There were no factual issues to
resolve because the school district never disputed D.P.'s factual
submissions. On the contrary, the school district expressly *relied
on* the factual submissions in D.P.'s motion and never submitted
its own evidence.

The school district complains that it had no opportunity to do
otherwise because the judge ruled so rapidly—over a long holi-
day weekend—without convening a hearing to entertain possible
evidentiary submissions. This objection implies that the judge
had a duty to offer the parties a hearing when neither side re-
quested one. Not so. The judge was not required to check with
the school district to see if it wanted to (or could) offer evidence
contradicting D.P.'s factual submissions. Rather, "the party seek-
ing the evidentiary hearing must demonstrate that it has and in-
tends to introduce evidence that if believed will so weaken the
moving party's case as to affect the judge's decision on whether
to issue the injunction." *Promatek*, 300 F.3d at 814 (internal quota-
tion marks omitted).

The school district never requested a hearing, nor did it alert
the court to evidence that, if received, would weaken D.P.'s case
and affect the judge's decision whether to grant her motion for a

preliminary injunction. With no factual disputes before him, the judge reasonably determined that a hearing was unnecessary.

On the merits, the school district challenges the judge's conclusion that D.P.'s claims are likely to succeed based on our decision in *Whitaker*. As we've explained, we reaffirmed *Whitaker* in *Martinsville* three weeks after the judge issued the requested preliminary injunction. Like this case, *Whitaker* and *Martinsville* were appeals from preliminary injunctions entered against school districts in lawsuits brought by adolescent transgender students who challenged school policies prohibiting them from using bathrooms corresponding to their gender identity. *See Martinsville*, 75 F.4th at 764–66; *Whitaker*, 858 F.3d at 1040–43. In *Whitaker* we held that the plaintiff, age 17, was likely to succeed on his claims under Title IX and the Equal Protection Clause because the school district's transgender bathroom policy was a form of unlawful sex discrimination. *Whitaker*, 858 F.3d at 1047–54. We reached the same conclusion in *Martinsville* in consolidated appeals involving similar claims by transgender students ages 13 to 15. 75 F.4th at 770–74.

The school district insists that D.P.'s case is distinguishable because she is slightly younger than the plaintiffs in those cases (she was 11 when the case was filed) and because the plaintiffs in those cases had medical conditions that required frequent bathroom use. *See Martinsville*, 75 F.4th at 765–66; *Whitaker*, 858 F.3d at 1041. The district also says this case is different because the school board adopted a formal policy that expressly permits case-by-case exceptions (unlike the informal policies at issue in *Whitaker* and *Martinsville*) and because the parents of other students objected to D.P.'s bathroom use (not so in *Martinsville*).

These slight differences do not undermine the district judge's conclusion that D.P is likely to succeed on her claims based on

binding circuit precedent. Our decisions in *Whitaker* and *Martinsville* did not turn on the plaintiffs' ages, hormone treatments, or medical conditions. And we struggle to see how either the existence of a formal policy with the possibility of case-by-case exceptions or the presence of parental complaints affects the legal analysis of D.P.'s claims. To the extent that this argument is directed at the equitable balancing of relative harms or the assessment of the public interest, these modest distinctions are not substantial enough to warrant disturbing the judge's discretionary judgment.

The school district argues in the alternative that our precedent is wrong and should be overruled. We declined an invitation to overrule *Whitaker* in *Martinsville*, 75 F.4th at 770–71. Judge Easterbrook concurred in the judgment only, explaining that he too was disinclined to overrule *Whitaker* because the existing circuit conflict on this issue will remain until the Supreme Court or Congress steps in. *Id*. at 775 (Easterbrook, J., concurring). But he did not endorse *Whitaker*; rather, he explained that in his view, the Eleventh Circuit's decision in *Adams v. St. Johns County School Board*, 57 F.4th 791 (11th Cir. 2022) (en banc), "is closer to the mark." *Id*. This panel agrees.

Accordingly, for the reasons explained in Judge Easterbrook's concurring opinion in *Martinsville*, we decline the invitation to overrule *Whitaker* and *Martinsville*.[2]

AFFIRMED

---

[2] The Supreme Court's forthcoming decision *United States v. Skrmetti*, 144 S. Ct. 2679 (2024), No. 23-477, 2024 WL 3089532 (U.S. June 24, 2024), may affect the analysis of D.P.'s claims, but for now our circuit precedent remains controlling.