# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 9, 2022

Lyle W. Cayce
Clerk

No. 22-50034

CAE Integrated, L.L.C.; Capital Asset Exchange and Trading, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Moov Technologies, Incorporated; Nicholas Meissner,

*Defendants—Appellees*.

Appeal from the United States District Court for the
Western District of Texas
USDC No. 1:21-CV-00377

Before Higginbotham, Dennis, and Graves, *Circuit Judges*.

Per Curiam:

CAE sued its former employee Nicholas Meissner and his current employer, Moov, for misappropriation of trade secrets and then moved for a preliminary injunction. The district court denied the preliminary injunction and CAE appealed. As CAE fails to establish a likelihood of success on the merits of its claims, we affirm the denial of the preliminary injunction.

No. 22-50034

## I.

For forty years, CAE Integrated L.L.C. and Capital Asset Exchange and Trading, L.L.C. (collectively CAE) have sold and traded semiconductor equipment. Moov Technologies Inc. (Moov) is a smaller company in the used semiconductor market, founded in 2017. Meissner worked at CAE as a trader, developing relationships with buyers and sellers of semiconductor equipment. His employment contract included a non-disclosure agreement protecting CAE's "propriety information" including its "customers and suppliers and any other nonpublic information that has commercial value." The contract also included a one-year prohibition on Meissner soliciting CAE's actual or potential customers with whom he was in contact during the year preceding any termination.

Through 2016, Meissner used his personal MacBook for work and used Google Drive to transfer and store large files, such as photographs of equipment and purchase agreements. The Google Drive account was linked to Meissner's personal Google account. Files saved on his MacBook were placed in a folder that synced to his Google Drive. In 2016, CAE provided all employees with computers. Meissner gave his MacBook to CAE to wipe it of CAE files. At that time, CAE took a snapshot of the computer, as it was then configured, which was stored on the MacBook's secondary drive. CAE returned the MacBook to Meissner, and he continued to use it as a personal computer until it crashed later that year, when he brought the MacBook to CAE for repair. CAE never again returned the MacBook to Meissner and he has had no access to the MacBook since 2016.

CAE fired Meissner on May 1, 2018. Meissner signed a separation agreement, agreeing to be bound by the 2014 non-compete clause for one year. He warranted that he had returned all company property, including documents stored in "his personal email or cloud storage accounts, or

No. 22-50034

elsewhere." The agreement included a general release of CAE's claims, known or unknown, against Meissner as of July 26, 2018. After being fired, Meissner asked CAE to return his MacBook once any CAE files were removed. While separating Meissner's personal files from work files, CAE moved the contents of the Google Drive to a new untitled folder on the MacBook's desktop, effectively moving those files to the Google Drive's trash. Weeks later, when looking for a personal document in his Google Drive (from a different laptop), Meissner discovered that the files been moved to the trash, rather than permanently deleted, and restored the Google Drive's contents. At this point, Meissner could access his Google Drive, but had no access to the MacBook.

After waiting out his non-compete, Meissner joined Moov on June 24, 2019 as Head of Sales. Meissner believed he had no CAE information in his possession and verified to Moov that he had not retained and would not use any CAE data. Before starting at Moov, he again checked his Google Drive account and deleted any documents he thought could contain CAE data.[1] These files were not in his Google Drive when he started at Moov.

In the year and a half after Meissner joined, Moov secured millions of dollars in investments and thousands of listings for used semiconductor equipment, valued at over $1 billion. CAE thought such impressive and quick growth was "highly implausible" "without some sort of a head start." CAE's CEO announced that CAE was "going to war" with Moov[2] and ran a forensic exam on Meissner's MacBook.[3] That forensic analysis looked at the

---

[1] The forensic analysis shows that these documents had been deleted from the Google Drive.

[2] Shortly thereafter, CAE learned that Mark Cuban had invested in Moov.

[3] The MacBook had been in CAE's possession for four years.

No. 22-50034

2016 snapshot of the Google Drive stored on the MacBook's secondary drive[4] and showed the folder synced to Google Drive with thousands of documents from when Meissner worked at CAE. Meissner does not dispute that he continued to use his Google Drive to store CAE documents throughout his time at CAE. But, further forensic analysis also showed that Meissner had not synchronized his Google Drive since he started at Moov and showed no access to the Google Drive by Meissner or Moov. Meissner had deleted all CAE information from his active Google Drive and thus did not have the data that appeared in the snapshot. And months before the preliminary injunction hearing, Meissner gave up access to his Google Drive entirely.

CAE sued Moov and Meissner for trade secret misappropriation under the Defend Trade Secrets Act of 2016 (DTSA) and the Texas Uniform Trade Secrets Act (TUTSA).[5] CAE moved for a preliminary injunction to prevent Moov from contacting 200 of its key customers. After nearly six months of discovery, the district court held a two-day evidentiary hearing. The district court found that CAE had not shown a likelihood of success on the merits and denied the preliminary injunction. CAE appealed the denial with regards only to its DTSA and TUTSA claims.

## II.

We review the denial of a preliminary injunction for abuse of discretion.[6] We review factual findings for clear error and legal conclusions

---

[4] This copy of the Google Drive was no longer associated with an active Google Drive account and could no longer sync to anything.

[5] 18 U.S.C. § 1836 *et seq*; Tex. Civ. Prac. & Rem. Code §§ 134A.001 *et seq.*

[6] *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 288 (5th Cir. 2020).

No. 22-50034

*de novo*,[7] giving "due regard to the trial court's opportunity to judge the witnesses' credibility."[8] Additionally, "[a] preliminary injunction is 'an extraordinary remedy which should not be granted unless the party seeking it has clearly carried [its] burden of persuasion.'"[9] "Only under 'extraordinary circumstances' will we reverse the denial of a preliminary injunction."[10]

## III.

A preliminary injunction is warranted only when the movant shows "(1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction is not granted, (3) that the injury outweighs any harm to the other party, and (4) that granting the injunction will not disserve the public interest."[11] The "burden of persuasion on all of the four requirements for a preliminary injunction is at all times upon the plaintiff."[12]

To succeed on the merits of its misappropriation of trade secrets claim, CAE must show that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant *used* the trade secret without

---

[7] *Atchafalaya Basinkeeper v. United States Army Corps of Engineers*, 894 F.3d 692, 696 (5th Cir. 2018).

[8] *Harm v. Lake-Harm*, 16 F.4th 450, 455 (5th Cir. 2021) (quoting Fed. R. Civ. P. 52(a)(6)).

[9] *Future Proof Brands*, 982 F.3d at 288 (quoting *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (alteration in the original)).

[10] *Anderson v. Jackson*, 556 F.3d 351, 355–56 (5th Cir. 2009) (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)).

[11] *Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[12] *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

No. 22-50034

authorization from the plaintiff."[13] If there are trade secrets at issue, they would have been improperly acquired by Meissner, thus we address the first two elements of CAE's misappropriation claim together.

## A.

A trade secret is information which derives independent economic value from being not generally known or readily ascertainable through proper means.[14] The existence of a trade secret is a question of fact.[15]

CAE alleges that Meissner and Moov misappropriated transactional documents and customer lists. What CAE refers to as the "transactional documents" are files from the Google Drive with purchase orders, invoices, customer equipment needs, and pricing history. Meissner has not had access to his MacBook since 2016 and he testified that the Google Drive contained none of the transactional documents when he started at Moov. The district court found Meissner's testimony credible and the forensic analysis confirmed that before Meissner began at Moov, he deleted any remaining transactional documents from his Google Drive. Forensics also showed that the only overlap between Moov's files and the 2016 Google Drive snapshot was two publicly available files from third parties. The district court did not

---

[13] *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018) (quoting *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 273 (5th Cir. 2009)) (emphasis in the original).

[14] Under TUTSA a trade secret includes any "compilation," "financial data," or "list of actual or potential customers or suppliers" that derive economic value from "not being generally known to, and not being readily ascertainable" by another person. Tex. Civ. Prac. & Rem. Code § 134A.002(6). Under DTSA a trade secret includes any "compilation[]" or "financial . . . information" that derives economic value from "not being generally known to, and not being readily ascertainable" by another person. 18 U.S.C. § 1839(3).

[15] *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004) (citing Restatement (Third) Unfair Competition § 39 cmt. d (1995)).

No. 22-50034

err in finding that CAE failed to show that Meissner and Moov had access to trade secrets in the transactional documents.

CAE also argues that Meissner and Moov misappropriated customer lists.[16] But, as Meissner testified and forensics confirmed, the Google Drive contained no customer lists when he started at Moov. CAE contends that Moov's knowledge of some CAE customers shows that Moov misappropriated trade secrets. Without any evidence that Meissner and Moov accessed or used data in the Google Drive the remaining potential sources of customer identities is Meissner's personal knowledge or public sources. Any injunctions placing conditions on "employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows."[17] Meissner's knowledge of whom he worked with while at CAE, absent other evidence, is insufficient to support a finding that he misappropriated trade secrets.[18]

---

[16] The district court found that while Moov had information for certain CAE customers, this was not a trade secret because the semiconductor equipment industry was a "closed system with a limited number of players" so it was "likely that competitors will have contact with the same potential customers simply by virtue of competing in the industry." CAE attacks the district court's characterization of the semiconductor market, describing the semiconductor market as "opaque," where "absent an intermediary" one would find it quite difficult to compete. However, we need not determine the size of the market to determine whether Meissner misappropriated trade secrets.

[17] 18 U.S.C. § 1836(b)(3)(A)(i)(I); *see also* Tex. Civ. Prac. & Rem. Code § 134A.003(a) (restricting injunctions from "prohibit[ing] a person from using general knowledge, skill, and experience that person acquired during employment").

[18] *E.g. Marek Brother Sys., Inc. v. Enriquez*, No. 3:19-CV-01082, 2019 WL 3322162, at *4 (N.D. Tex. July 24, 2019) (denying injunction where plaintiff "failed to persuade the court that the customer information [defendant] sent to his personal e-mail address '[was] not generally known or readily ascertainable by independent investigation'"); *BCOWW Holdings, LLC v. Collins,* No. SA-17-CA-00379, 2017 WL 3868184, at *15 (W.D. Tex. Sept. 5, 2017) (denying injunction because "[c]ustomer relationships do not qualify as trade secrets," even if a company "invests time and money to cultivate those relationships").

No. 22-50034

Furthermore, CAE has not identified a single contact whose information was not publicly available or ascertainable through proper means. Semiconductor industry participants are available in third-party directories, meet at conventions and trade shows, and can be found through online searches. Of the 200 contacts that CAE requested the district court enjoin Meissner and Moov from contacting, the majority were listed in Moov's database before Meissner joined Moov. The district court did not clearly err in finding that neither Meissner nor Moov misappropriated trade secrets.

**B.**

Even if CAE had established that Meissner or Moov misappropriated trade secrets, it failed to show the use or potential use of trade secrets.[19] CAE contends that Moov could never have succeeded without CAE's data, claiming that "the 'use' of this data can reasonably be inferred from Moov's *results*." This inference is insufficient to support a finding that Moov used CAE's trade secrets.

Months before the preliminary injunction hearing, Meissner relinquished access to his personal Google Drive. Meissner cannot access anything saved in his Google Drive, nor can Moov. "The critical question in issuing the injunction and also the ultimate test on review is whether defendant's past conduct indicates that there is a reasonable likelihood of

---

[19] CAE need not show actual use of trade secrets; however it must show that Meissner or Moov is "in a position to use" trade secrets. *TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 1:19-CV-58, 2019 WL 369152, at *3 (W.D. Tex. Jan. 30, 2019); *see Cardoni v. Prosperity Bank*, 805 F.3d 573, 590 (5th Cir. 2015); *Malone v. PLH Grp., Inc.*, No. 01-19-00016-CV, 2020 WL 1680058, at *4–5 (Tex. App.—Houston [1st Dist.] Apr. 7, 2020, pet. denied).

further violations in the future."[20] As there is no continued access to the MacBook or Google Drive, there is no threatened future use of trade secrets.[21] CAE did not present sufficient evidence that Meissner or Moov used CAE's files or are in a position to do so.

CAE cannot show a likelihood of success on its trade secrets claim as it cannot show that Meissner or Moov are in a position to use its trade secrets.[22] We affirm the district court's denial of the preliminary injunction.

## IV.

Moov alternatively argues that we could affirm because CAE released its right to bring this suit entirely. Although Meissner's post-separation agreement included a general release of claims that CAE had against Meissner as of July 26, 2018, this argument has no purchase. By its terms, the release does not cover "any claims relating to or arising from [Meissner's] willful or wanton misconduct, fraud, or criminal conduct." As misappropriation of trade secrets is a felony under Texas and federal law, these claims were not released.[23] Moreover, the release only covers Meissner, not Moov. The separation agreement has no bearing on this suit.

**\*\*\*\***

---

[20] *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978).

[21] *E.g. Embarcadero Techs., Inc. v. Redgate Software, Inc.*, 1:17-CV-444-RP, 2017 WL 5588190, at \*6 (W.D. Tex. Nov. 20, 2017) (where defendant relinquished access to Google Drive, "a preliminary injunction is not necessary to prevent potential harm").

[22] CAE argued that should this Court find it had shown a likelihood of success, that we should look to the remaining preliminary injunction factors. As CAE must carry the burden on all four elements, its failure to show a likelihood of success alone is sufficient to justify a denial. *PCI Transp.*, 418 F.3d at 545.

[23] Tex. Penal Code § 31.05; 18 U.S.C. § 1832.

No. 22-50034

We AFFIRM the denial of the preliminary injunction.