# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 6, 2024

Lyle W. Cayce
Clerk

No. 23-20519

———————

Jung-Hoon Yoon,

*Plaintiff—Appellant*,

*versus*

Nisha Garg; Carolee King; Daniel Sharphorn; Ben Raimer; Charles P. Mouton; Et al.,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-4089

———————————————————————

Before Clement, Engelhardt, and Wilson, *Circuit Judges*.

Per Curiam:[*]

This case arises out of the imposition of disciplinary action on Dr. Jung-Hoon Yoon following allegations that Yoon falsified an image in a published journal article. Yoon sought to enjoin the defendants from enforcing the employment-related punishments, claiming that the defendants violated his federal due process rights when conducting the

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-20519

investigation into the misconduct allegations. The district court denied Yoon's request for a preliminary injunction, finding that Yoon lacked a constitutionally protected property interest that would entitle Yoon to relief. For the following reasons, we AFFIRM.

## I. Factual and Procedural Background

Yoon is a research scientist at the University of Texas Medical Branch ("UTMB") in Galveston, Texas, where he works in the laboratory of Dr. Louise Prakash and Dr. Satya Prakash. On April 30, 2019, Jeseong Park, a fellow research scientist at UTMB, reported to UTMB's Scientific Integrity Office ("SIC") that Yoon had falsified images included in a recent journal publication.[1]

Following Park's allegations, UTMB's SIC began the investigation process laid out in the federal Public Health Service Policies on Research Misconduct ("PHS policies"). *See* 42 C.F.R. § 93, *et seq.* Because Yoon's research was supported by National Institute of Health grants, UTMB was required to comply with the PHS policies, which are further contained in UTMB's Policy and Procedure Manual on Integrity in Research ("PPMIR"). These policies lay out a two-step process for review of allegations of research misconduct: (1) an inquiry conducted by an institutional investigation committee, which is comprised of an unbiased group of individuals from the research institution; and (2) an investigation conducted by the institutional investigation committee. The inquiry step involves a preliminary review of the evidence to determine whether the allegations may have merit. If so, the institution (here, UTMB) must provide

---

[1] The paper can be found at: Yoon, J.H., Johnson, R.E., Prakash L., and Prakash S., *DNA polymerase Θ accomplishes translesion synthesis opposite 1, N6 -ethenodeoxyadenosine with a remarkably high fidelity in human cells*, Genes & Dev. 33:282–287 (2019). The allegedly falsified images are listed in the paper as Supplementary Figure S2.

the United States Department of Health & Human Services Office of Research Integrity ("ORI") with a written inquiry report and a notice that the institution is proceeding to the investigation step. *See* 42 C.F.R. §§ 93.309(a), 93.310(b). The investigation step then requires a full review of all relevant evidence, involves witness interviews, and results in the creation of a substantial factual record. *See* 42 C.F.R. §§ 93.215, 93.310(e). Once the investigation is complete, the institutional committee prepares a detailed written report describing the allegations, the evidence, and the conclusion reached, among other things. *See* 42 C.F.R. § 93.313.

The individual at the center of this review process is entitled to notice, and an opportunity to present evidence to rebut the allegations at various stages. For example, the committee must provide a draft of its investigation report to the individual, who is then allowed thirty days to submit comments. *See* 42 C.F.R. § 93.312(b). The committee may then consider the comments and include them in the final investigation report. *See id.*

In Yoon's case, UTMB initially began an inquiry into Park's allegations in 2019. However, when UTMB reported its findings to the ORI, ORI determined that the investigation failed to fully comply with the PHS policies, primarily because UTMB had improperly combined the inquiry and investigation steps into one. As a result, UTMB developed a corrective action plan to better handle allegations of misconduct. Thereafter, in June 2022, UTMB's President created an institutional committee to restart the inquiry into the allegations against Yoon.[2] This committee conducted the

---

[2] While Yoon seems to argue that UTMB could not begin its review of Park's allegations at this point in time, the 2022 investigation was within the six year statute of limitations for investigating allegations of research misconduct. *See* 42 C.F.R. § 93.105(a). In conducting the investigation, the committee also sought and obtained two extensions from ORI regarding the final report deadline, as permitted in the PHS policies. *See* 42 C.F.R. § 93.311.

preliminary factual inquiry and determined that Park's allegations had substance.

After informing ORI of the results of the inquiry, the committee proceeded with its investigation, during which it interviewed Park, Yoon, the Prakashes, and another member of the laboratory. With his counsel present, Yoon had an opportunity to present evidence during his interview, and he was able to review the recording and make any necessary changes. After reviewing all the evidence, the committee concluded by a preponderance of the evidence that Yoon intentionally falsified and fabricated the images contained in the published article. UTMB's Interim President, Dr. Charles Mouton, agreed with the committee's findings and instituted four disciplinary actions, including that Yoon complete an ethics course and be placed on administrative probation for one year. Notably, Yoon was not terminated from his position, and he remains a research scientist at UTMB to this day.

On November 23, 2022, Yoon filed suit under 42 U.S.C. § 1983 against twenty-five UTMB employees and one employee of the University of Texas System, alleging a violation of his due process rights based on UTMB's failure to adhere to the PHS policies and PPMIR. On August 14, 2023, Yoon filed an application for a temporary restraining order and preliminary and permanent injunction. The district court held a hearing on Yoon's application on August 23, 2023 and subsequently ordered additional briefing. While the application was pending, the defendants agreed to delay enforcement of any disciplinary action against Yoon until the district court rendered its decision.

On September 15, 2023, before the district court could issue its order on the application, Yoon filed a "Brief in Support of Application for Temporary Relief" and a "Second Application for Temporary Restraining

Order." The defendants filed a motion to strike the supplementary brief as untimely, which the district court granted on October 10, 2023. The district court simultaneously struck Yoon's second application as untimely and improperly filed, noting the length of the application and the voluminous exhibits attached thereto.

In the same October 10, 2023 order, the district court denied Yoon's request to enjoin the defendants from enforcing the disciplinary actions against him. The district court found that, although Yoon referenced "property rights" in his application, "he fail[ed] to explain what those property rights are and how Defendants have allegedly interfered with them." The court went on to note that, assuming Yoon was implying the existence of a property interest in the PHS policies and/or the PPMIR, Yoon failed to cite any authority in support of his position. Yoon also failed to provide any evidence that his employment, or the benefits derived therefrom, had been impeded in any way by UTMB's actions. Thus, the district court held that Yoon failed to show an interference with an existing, constitutionally protected property interest, and therefore, he could not establish a likelihood of success on the merits of his due process claim. Yoon timely appealed the district court's order.

## II. Standards of Review

This Court reviews the district court's denial of Yoon's application for a preliminary injunction for abuse of discretion. *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 261 (5th Cir. 2022). "We review factual findings for clear error and legal conclusions *de novo*, giving due regard to the trial court's opportunity to judge the witnesses' credibility." *Id.* (cleaned up). "A preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried its burden of

persuasion." *Id.* (cleaned up). "Only under extraordinary circumstances will we reverse the denial of a preliminary injunction." *Id.* (cleaned up).

We review the decision to strike the supplementary brief and second application for abuse of discretion. *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).

**III. Analysis**

Yoon raises three arguments on appeal: (1) the district court erred in denying Yoon's request for a preliminary injunction; (2) the district court erred in striking Yoon's supplementary briefing; and (3) the district court erred in striking Yoon's second application.

## a. Request for preliminary injunction

To obtain a preliminary injunction, Yoon had the burden to establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536, 543 (5th Cir. 2023) (citation omitted), *cert. denied sub nom. Shenzen Sanlida Elec. Tech. Co. v. Whirlpool Corp.*, 144 S. Ct. 807 (2024). "A preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009) (cleaned up). In its order denying Yoon's request for a preliminary injunction, the district court focused on the first element, finding that Yoon failed to establish a likelihood of success on the merits because he could not demonstrate a constitutionally protected liberty or property interest that would support his procedural due process claim.

Procedural due process under the Fourteenth Amendment is implicated where an individual is deprived of life, liberty, or property, without due process of law. U.S. CONST. amend. XIV, § 1, cl. 3. The Supreme Court uses a two-step analysis to determine whether an individual's procedural due process rights have been violated. The first question "asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted). "The types of interests that constitute 'liberty' and 'property' for Fourteenth Amendment purposes are not unlimited," but rather "an individual claiming a protected interest must have a legitimate claim of entitlement to it." *Id.* (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

Yoon attempts to tie his claim for injunctive relief to a purported property interest[3] in the "explicit mandatory language" of the PHS policies and PPMIR, which "limit discretion" and therefore give rise to a protected interest. Yoon points to *Kentucky Department of Corrections v. Thompson* for the proposition that specific directives in a statute that guide a decisionmaker's process of review can give rise to a protected liberty interest. *See id.* at 463. However, that case dealt with procedural due process in the context of commuting prison sentences—an entirely different factual scenario than that presented here. And importantly, "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). To the extent that Yoon argues the timing of the

_____

[3] Yoon has never argued that he was deprived of a protected liberty interest. Our discussion therefore focuses on the existence of a protected property interest, much like the district court's analysis of the issue.

investigation and the alleged bias of certain committee members creates some sort of protected right, he fails to point to any provision in the policies that would confer such entitlement, nor can he point to any case law establishing such a right. Yoon may take issue with the process he received, but identifying a protected property right must come first. Other than conclusory statements that the policies entitle him to relief, Yoon fails to explain how such policies give rise to a substantive interest that can support a due process claim. *See Roth*, 408 U.S. at 577 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.").

Further, while the defendants agree that Yoon has a protected interest in his employment, they assert that any "constructive discharge theory" Yoon has put forth must fail because UTMB simply did not terminate Yoon's employment. Yoon argues that, when the disciplinary actions are ultimately enforced, his professional reputation will be ruined, and he will not be able to find employment elsewhere. Yet, as Yoon concedes, he still works in the same laboratory with the Prakashes. Yoon has also not produced evidence of any impediment to the benefits of his employment as a result of the investigation into his misconduct. And "simply being 'less attractive to other employers' does not amount to a deprivation," especially where, as here, there are no other potential employers at play and any "deprivation" is entirely speculative. *See Helm v. Eells*, 642 F. App'x 558, 565 (6th Cir. 2016). Yoon has not been deprived of his property interest in his employment, and the district court did not err in concluding that he will likely be unable to show a deprivation of any other property interest. Thus, it was not an abuse of discretion to deny Yoon's request for a preliminary injunction.

Even if Yoon could show a protected property interest in the policies themselves, his claim fails on the second step of the Supreme Court's due process analysis because the defendants' procedures were constitutionally sufficient. *See Thompson*, 490 U.S. at 460. "We have previously held that a

university's failure to comply with its own rules does not give rise to a constitutional violation as long as the aggrieved party 'was in fact given the process guaranteed him by the Constitution.'" *Pham v. Blaylock*, 712 F. App'x 360, 363 (5th Cir. 2017) (quoting *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1231 (5th Cir. 1985)). In *Pham v. Blaylock*, the plaintiff sued several individuals involved in the disciplinary proceedings that led to his expulsion from pharmacy school, alleging a violation of his procedural due process rights. 712 F. App'x at 361. In holding that the process that plaintiff received was constitutionally sufficient, we noted that plaintiff received notice and a hearing for each incident prior to his expulsion, and the school gave plaintiff an opportunity to rebut the allegations against him. *Id.* at 363. Because plaintiff received these procedural safeguards before his expulsion, we held that his due process rights were not violated. *Id.*

Like the *Pham* plaintiff, Yoon received notice at every step of the process, and he was given—and took—the opportunity to rebut the allegations of misconduct. "[A] constitutional violation is not plausibly alleged simply by putting forth facts showing that the defendant failed to follow its own rules." *Jackson v. Pierre*, 810 F. App'x 276, 279 (5th Cir. 2020). Where Yoon was given both notice and an opportunity to be heard, it is irrelevant that the process was "lacking in all the accoutrements [Yoon] sought." *Id.* at 280. We therefore agree with the defendants that UTMB, in following the PHS policies and PPMIR, provided Yoon with constitutionally sufficient process.

Because Yoon has not shown any deprivation of a protected property interest, he cannot establish a likelihood of success on the merits so as to be entitled to a preliminary injunction. As Yoon's request fails on the first element, we decline to address the remaining three, and affirm the district court's denial of Yoon's application.

No. 23-20519

### b. Out-of-time briefing and second application for relief

Yoon next argues that the district court erred in striking both his supplementary briefing and his second application for temporary restraining order. As for the supplementary brief, Yoon asserts that the declarations contained therein were not discovered until after the filing of the first application, and the defendants were not prejudiced by the late filing. And for the second application, Yoon argues that the district court should not have *sua sponte* struck the "live pleading" where it may have been necessary to prevent the defendants from enforcing disciplinary actions against Yoon.

Federal Rule of Civil Procedure 15(d) states that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading." "In general, an application for leave to file a supplemental pleading is addressed to the discretion of the court and should be freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action." 6A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Fed. Prac. and Proc. § 1505 (1990).

As defendants point out, Yoon did not invoke Rule 15(d) at the district court, primarily because he did not seek leave to file either document before doing so. However, even if Yoon did properly raise his Rule 15(d) argument,[4] he cannot show that the district court abused its discretion in striking the two filings. In striking the supplementary brief, the district court emphasized that the brief was twenty pages long with 425 pages of exhibits, most of which had

---

[4] We also note that Rule 15(d) may not apply to the supplementary brief at all because the brief likely does not qualify as a "pleading" within Rule 15(d)'s ambit. *See* Fed. R. Civ. P. 7(a). However, we assume arguendo that Rule 15(d) does apply for the benefit of our analysis here.

not been previously produced. Because Yoon did not seek leave to file such a voluminous brief, and because it introduced new arguments and evidence not presented at the hearing, the district court held that the brief prejudiced the defendants and was improperly filed.

Moving to the second application, the district court again noted that Yoon did not seek leave to file the document, which was nineteen pages long with 426 pages of exhibits. Further, although Yoon argued that the second application was necessary to prevent enforcement of disciplinary actions against him, the district court noted that there was no evidence that defendants sought to do so; rather, they agreed to halt enforcement while the court's decision was imminent. Thus, the district court struck the application as similarly prejudicial and improper.

The district court did not abuse its discretion in striking either the supplementary brief or the second application, where Yoon failed to seek leave of court to file either and where both would have resulted in significant prejudice to the defendants. *See Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 318 (5th Cir. 2014) (finding no abuse of discretion where plaintiff filed document "without consent or leave").

## IV. Conclusion

For the foregoing reasons, we AFFIRM.