# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 16, 2026

Lyle W. Cayce
Clerk

_____

No. 24-30640

_____

Associated Professional Educators of Louisiana,

*Plaintiff—Appellant*,

*versus*

EDU20/20, L.L.C.; Courtney Dumas; Miranda Britt,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:22-CV-5720

_____

Before Dennis, Oldham, and Douglas, *Circuit Judges*.
Dana M. Douglas, *Circuit Judge*:*

After the Executive Director of the Associated Professional Educators of Louisiana ("A+PEL") discovered that a former employee, Miranda Britt, was working on behalf of EDU20/20 while still employed at A+PEL, A+PEL sued Britt, EDU20/20, and others at EDU20/20 (collectively, "Defendants"), asserting claims for trademark infringement and unfair competition, misappropriation of trade secrets, breach of fiduciary duty, and

_____

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

unfair trade practices.  The parties filed a number of cross-motions for partial summary judgment, and the district court granted Defendants' motions and denied A+PEL's motions.  A+PEL appeals the grant of Defendants' motions and the denial of one of its motions.  We AFFIRM in part, REVERSE in part, and VACATE in part.

## I

## A

A+PEL is a 501(c)(3) non-profit corporation "organized for the purpose of supporting educators."  Since 1984, A+PEL has continuously and exclusively used the name "A+PEL" and the below logo in interstate commerce in connection with the production and marketing of its professional training services:



Among other things, A+PEL's services include teacher and principal certification trainings related to curriculum and instruction.  Approval by the Louisiana Department of Education ("LDOE") is required to provide certain categories of educational training services in Louisiana, including A+PEL's Mentor Teacher program.  In 2019, LDOE approved A+PEL as a vendor for the Mentor Teacher program in English Language Arts ("ELA"), Math, and K–12 Literacy.

According to A+PEL, it also maintains a Client List and a Member Database. A+PEL asserts that the Client List contains "a number of lists of its customers, including customer school districts with the identities of specific points-of-contacts and related information designated for each as

well as lists of . . . mentor teacher clients." A+PEL developed the Client List "through its many years of experience and developing relationships with the school districts." A+PEL asserts that it "physically secure[s] its office and stor[es] the Client List on its secure data storage service . . . [that] [o]nly authorized users can access . . . through the use of a secure, private log in ID and password."

A+PEL contends that the Member Database contains the following information about each of its members: "(1) full name, (2) employment information, (3) preferred email address, (4) physical mailing address, (5) telephone number, (6) school ID #, (7) method of payment, including bank account information and/or credit card information, and (8) last four digits of the [member]'s social security number." A+PEL asserts that it adds information to the Member Database, such as the names and contact information of members who subscribe to its newsletter and attend conferences that A+PEL hosts and sponsors.

Miranda Britt began working with A+PEL in 2014. In 2016, A+PEL promoted Britt to the position of Deputy Director. As Deputy Director, Britt occasionally represented A+PEL at conferences.

A+PEL asserts that during Britt's employment, all A+PEL employees were subject to A+PEL's employee handbook. The handbook, designated as "Proposed for January 2013 Adoption," provides that employees "may not engage in outside employment, including self-employment, if the employment constitutes a conflict of interest." The handbook offered examples of potential conflicts of interest, including "[w]orking for or owning/sharing ownership of a company that contracts with A+PEL or provides services or products to A+PEL." It also informed employees that "[i]nterference with [their] duties for A+PEL or a conflict of interest by a secondary job could result in disciplinary action up to and

including discharge." According to A+PEL's Executive Director, Keith Courville, A+PEL considers requests to perform secondary work on a "case-by-case basis, considering the facts and circumstances of each situation." The handbook further requires employees to refrain from discussing "confidential information" with anyone outside of the organization. Per the handbook, "[a]ll information that employees acquire in the performance of their duties is strictly confidential."[1]

In March 2015, Britt and Courtney Dumas filed articles of organization with the Louisiana Secretary of State to form EDU20/20, L.L.C. EDU20/20 is an "educational support organization," that "support[s] teachers and leaders in maximizing their curriculum for student success; coaching teachers and leaders." In January 2021, Shannon Streett became a member of EDU20/20. As members of EDU20/20, Britt, Dumas, and Streett wrote a book together titled, "The Tier One Curriculum Trap."

Approximately three months before Streett became a member, EDU20/20 applied for approval to serve as a vendor of instructional materials, which LDOE approved. Though EDU20/20 has never been approved by LDOE to provide Mentor Teacher training like A+PEL, the organization had a series of confirmed and tentative deals in 2021 that formed the basis of A+PEL's suit against it.

First was the Catahoula Leadership Academy and the related Catahoula Forward program. In January 2021, Ronald Lofton, the

_____

[1] Britt does not recall having seen a copy of the handbook, and Defendants assert that she was not aware of the unwritten requirement to obtain approval from Courville before performing secondary employment. They contend that A+PEL employees frequently performed outside work, including in the education training field, and that employees used A+PEL's logo in presentations for such work.

superintendent of the Catahoula Parish School District, contacted Dumas to request that EDU20/20 provide "teacher standards support" related to mathematics. Over the next four months, Dumas shared with Lofton a proposal for the Catahoula Leadership Academy and formally selected the program's first cohort of educators. Britt participated in the initial brainstorming of the program and a presentation on the first day of the program in July 2021. Britt also presented at the Catahoula Parish School District's "Catahoula Forward" retreat, for which she designed the logo.

The presentations at Catahoula Leadership Academy and Catahoula Forward included a slide describing Britt as EDU20/20's Senior Director of Partnerships. The slide also featured A+PEL's logo, as well as EDU20/20's logo among others. Other images on the slide included the cover of "The Tier One Curriculum Trap," pictures of Britt with friends and family, a cartoon depiction of Britt, a "Geaux Tigers" image, and maps of Zachary, Louisiana, and Prairieville, Louisiana, with an arrow between the two maps.

Tia Neal, then an employee of the Catahoula School District, attended the Catahoula Leadership Academy and Catahoula Forward presentations. In a declaration offered by A+PEL, Neal stated that she assumed that there was an association or affiliation between A+PEL and EDU20/20 because she observed the use of A+PEL's logo in Britt's presentations.

In addition to the projects with the Catahoula School District, EDU20/20 worked with the West Feliciana School District. In May 2021, Britt attended the Teacher Leader Summit, an education professional development conference. A+PEL sent Britt as its representative and paid for the cost of her hotel room.

Without informing A+PEL, Britt also attended the conference on behalf of EDU20/20. In addition to her A+PEL presentation, Britt gave

two presentations for EDU20/20: (1) "Tighten Up Your Saggy PLCs" ("Saggy PLCs"), which Britt conducted individually; and (2) "Clean Up Your Mouth: Eliminating the F-Word in ELA Instruction" ("Clean Up Your Mouth"), which she presented with Dumas and Streett.

The Saggy PLCs presentation included a slide identical to that which appeared in Britt's presentation at the Catahoula Leadership Academy and Catahoula Forward retreat, except that it identified Britt as "Deputy Director of A+PEL 2014–Present," not EDU20/20's "Senior Director of Partnerships."

The Clean Up Your Mouth presentation included slides featuring Dumas and Streett without the A+PEL logo. Britt's slide in that presentation, however, did include the A+PEL logo. But like her presentation at the Catahoula Leadership Academy and Catahoula Forward retreat, the slide introduced her as EDU20/20's Senior Director of Partnerships.

Britt received inquiries related to her presentations at the Teacher Leadership Summit from an education program consultant at the LDOE, and from Hollis Milton, the superintendent of the West Feliciana School District. Although the LDOE consultant contacted Britt at her A+PEL email address, Britt directed her to Dumas and EDU20/20. Neither A+PEL nor EDU20/20 ultimately entered into a contract with LDOE based on this request because the consultant's area of expertise was unrelated to the focus of both organizations.

Milton approached Britt while at the conference and requested that Britt conduct the Saggy PLCs presentation at the West Feliciana School District—a district with which A+PEL had worked in the past. Britt agreed and subsequently took a half-day of paid personal leave from her A+PEL position to present at the West Feliciana School District on behalf of

EDU20/20. However, in an email informing her A+PEL co-workers that she would be absent, Britt stated that she was taking leave to get organized after returning from vacation. Britt testified at her deposition that she lied because she wanted to avoid confrontation with Courville since Courville and Milton were friends and Milton requested a presentation that A+PEL could not provide, as it was based on the book she wrote with Dumas and Streett.

Torrence Williams, then an employee of the West Feliciana School District, attended Britt's presentation. In a declaration offered by A+PEL, Williams stated that he assumed A+PEL endorsed Britt's presentation because Britt introduced herself as an A+PEL employee, and Williams observed the use of A+PEL's logo in Britt's presentation and overheard other attendees discuss Britt's affiliation with A+PEL.

EDU20/20 and A+PEL were in the crosshairs again with regard to a program called LEAD West. In May 2021, A+PEL agreed to provide the West Baton Rouge School District ("WBRSD") with the LEAD West program. Britt subsequently received an email from a WBRSD member informing her of the district's agreement with A+PEL and requesting that she develop the program. Britt worked on LEAD West from late spring 2021 into early 2022.

As part of LEAD West, Britt prepared and executed a series of presentations. A December 2021 presentation incorporated materials created and presented by Dumas for EDU20/20's Clean Up Your Mouth presentation at the Teacher Leader Summit earlier that year.

According to Defendants, in order to present training materials on site, Britt needed a WBRSD Google account. WBRSD contacted Britt at her EDU20/20 email address to gather the information needed to issue Britt's Google account with WBRSD. Before a LEAD West session in February 2022, participants were instructed to bring their laptops to "work[]

through the mentor course." On the day of the session, Britt used an A+PEL Google account to share A+PEL's Mentor Teacher training materials with her WBRSD Google account.

On September 23, 2021, Britt resigned from full-time employment with A+PEL, effective December 31, 2021. Approximately one week prior to giving notice of her resignation, Britt logged into the Member Database.

From January 2022 to March 2022, Britt continued her work with A+PEL, including LEAD West, in a part-time capacity. Shortly after becoming a part-time employee at A+PEL, Britt discussed with WBRSD the possibility of continuing her work with LEAD West on behalf of EDU20/20 instead of A+PEL, given that she planned to leave A+PEL and EDU20/20's book and slides were featured in the LEAD West program. Britt ultimately determined that LEAD West would stay with A+PEL because Courville "clearly [was not] going to let [her] leave with a contract." In March 2022, A+PEL terminated Britt's part-time employment.

After Britt's termination, Dumas contacted Courville by text message, stating that EDU20/20 had been asked to provide Mentor Teacher training for the second year of Catahoula Leadership Academy. Upon confirming Dumas's statement with Neal, Courville compared photographs of A+PEL's Lead West presentation from December 2021 with photographs of EDU20/20's Catahoula Leadership Academy presentation and "saw th[at] two sections of the presentations were an exact match."

In May 2022, A+PEL made public records requests to various school districts "in an attempt to investigate the activities of EDU20/20." The information from these requests revealed that Britt had been working on behalf of EDU20/20 in 2021 while employed full-time at A+PEL. About five months later, A+PEL initiated this lawsuit against Britt, Dumas, and EDU20/20 in the Western District of Louisiana.

B

A+PEL's operative complaint asserted the following claims: (1) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Louisiana Uniform Trade Secrets Act ("LUTSA"), LA. REV. STAT. § 51:1431 *et seq.*; (2) impermissible solicitation of A+PEL's customers in violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), LA. REV. STAT. § 51:1409 *et seq.*; (3) civil conspiracy; and (4) unfair competition and trademark infringement under the Lanham Act, 15 U.S.C. § 1125.

After discovery, A+PEL filed three motions for partial summary judgment, each motion separately seeking summary judgment as to: (1) its claims against Britt for breach of fiduciary duty and violations of LUTPA; (2) its claims against all Defendants under the Lanham Act; and (3) its claims against all Defendants for misappropriation of trade secrets under DTSA and LUTSA.

Defendants filed two motions for partial summary judgment: one seeking summary judgment as to all of A+PEL's claims relating to the misappropriation of trade secrets and confidential information, and the other seeking summary judgment as to all of A+PEL's claims relating to Britt's use of A+PEL's logo.

The district court denied A+PEL's motions and granted Defendants' motions. As to A+PEL's Lanham Act claims, the court determined that A+PEL offered insufficient evidence to create a genuine dispute as to the likelihood of confusion caused by Britt's use of A+PEL's logo. Regarding A+PEL's claims for misappropriation of trade secrets under DTSA and LUTSA, the court found that neither A+PEL's Mentor Teacher training

materials nor its "Customer List" constitute protected trade secrets.[2] The court further determined that any LUTPA claims or breach of fiduciary duty claims stemming from the use of A+PEL's logo and confidential information did not survive Defendants' summary judgment motion because A+PEL failed to establish damages resulting from such conduct.

With all federal claims disposed of, the court declined to exercise supplemental jurisdiction over A+PEL's state law claims for violations of LUTPA, breach of fiduciary duty, and conspiracy, insofar as these claims relate to the diversion of customers from A+PEL to EDU20/20. Accordingly, the court dismissed these claims without prejudice. A+PEL timely appealed.

## II

We review a "district court judgment rendered on cross-motions for summary judgment de novo." *Century Sur. Co. v. Colgate Operating, L.L.C.*, 116 F.4th 345, 348 (5th Cir. 2024). Underlying factual findings are reviewed for clear error. *A.A. v. Northside Indep. Sch. Dist.*, 951 F.3d 678, 684 (5th Cir. 2020).

Reviewing each party's motion independently, we view the evidence and inferences in the light most favorable to the non-moving party. *Century Sur. Co. v. Colgate Operating*, 116 F.4th at 349. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-

---

[2] The district court also determined that A+PEL's LUTSA claim was particularly apt for dismissal because A+PEL failed to present summary judgment evidence demonstrating a "reasonable inference" of damages, as required for such claims.

movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citation modified). On the other hand, a movant that bears the burden of proof at trial "must establish beyond peradventure all of the essential elements of the claim . . . to warrant judgment in his favor." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (quoting *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017)).

A district court's refusal to exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367 is reviewed for abuse of discretion. *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 599 (5th Cir. 2009).

## III

A+PEL appeals the dismissal of its Lanham Act, LUTSA, and DTSA claims, as well as the denial of partial summary judgment against Britt for breach of fiduciary duty and violations of LUTPA. We address the grant of Defendants' motions first before turning to the denial of A+PEL's motion.

### A

#### 1

A+PEL challenges the partial summary judgment on its Lanham Act claim on grounds that it presented evidence of actual confusion. A+PEL further contends that the district court improperly drew inferences in favor of Defendants.

To prove a claim for trademark infringement under the Lanham Act, a plaintiff must establish both an "ownership in a legally protectible mark," and infringement based on "a likelihood of confusion in the minds of

potential customers as to the source, affiliation, or sponsorship of the product at issue." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474, 478 (5th Cir. 2008) (citation modified). Here, the parties dispute the second prong—the likelihood of confusion. Whether there was a likelihood of confusion is a factual finding. *See Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 288 (5th Cir. 2020). We will uphold the district court's determination if it is "plausible in light of the record as a whole." *Moore v. Brown*, 868 F.3d 398, 403 (5th Cir. 2017) (per curiam).

We have held that a "[l]ikelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000). When assessing the likelihood of confusion, we consider the following non-exhaustive factors, also called the "digits of confusion":

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion[, and] (8) the degree of care exercised by potential purchasers.

*Smack Apparel Co.*, 550 F.3d at 478.

The district court determined that A+PEL offered insufficient evidence to create a genuine dispute as to the likelihood of confusion caused by Britt's use of A+PEL's logo, largely focusing on the element of actual confusion. Actual confusion may be shown through "anecdotal instances of consumer confusion, systematic consumer surveys, or both." *Rex Real Est. I, L.P. v. Rex Real Est. Exch. Inc.*, 80 F.4th 607, 623 (5th Cir. 2023). Still, we have rejected anecdotal evidence of actual confusion where the plaintiff fails

to show that "a misleading representation by [the defendant], as opposed to some other source, caused a likelihood of confusion." *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 487 (5th Cir. 2004). We have also stressed the importance of context, holding that "in addition to the digits of confusion, the particular context in which the mark appears must receive special emphasis." *Id.* at 485–86.

A+PEL contends that the district court impermissibly discounted as self-serving declarations by Neal and Williams—now A+PEL employees—that demonstrated actual confusion. Although a self-serving declaration can preclude summary judgment, a self-serving declaration that is conclusory cannot. *See Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021).

A+PEL contends, however, that the district court improperly resolved inferences in favor of Defendants when it determined that the source of Neal's and Williams's confusion was the fact that they knew Britt worked for A+PEL, rather than Britt's use of the A+PEL logo in her presentation. While it is true that Britt's employment with A+PEL *could have* been the source of the actual confusion rather than the logo, at the summary judgment stage, we must view this evidence and the resulting inferences in the light most favorable to A+PEL.[3] *Century Sur. Co. v. Colgate Operating, L.L.C.*, 116 F.4th at 348.

A+PEL also asserts that the district court ignored the email sent from an LDOE representative to Britt's A+PEL email address, which Britt re-directed to Dumas's EDU20/20 email address. "Infringement can be based

---

[3] Furthermore, the district court conflated the two declarations in resolving these inferences. Although Williams overheard the other attendees discuss Britt's affiliation with A+PEL, Neal only identifies the logo as the source of confusion.

on confusion that creates initial interest, even though no actual sale is finally completed as a result of the confusion." *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998). Accordingly, misdirected inquiries can constitute evidence of actual confusion. *See, e.g.*, *Am. Century Proprietary Holdings v. Am. Century Cas. Co.*, 295 F. App'x 630, 638 (5th Cir. 2008); *cf. Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173 (5th Cir. 1986) (holding that there was no evidence of actual confusion where plaintiff did not put forth evidence of "misplaced phone calls, misdirected mail, or other indicia of actual confusion"). Therefore, the email is a supporting misdirected inbound inquiry that further supports evidence of actual confusion in light of the declarations.

A+PEL has identified evidence showing a genuine dispute of material fact on its Lanham Act claim, showing Defendants have not met their burden at summary judgment. Therefore, Defendants' motion for summary judgment on the Lanham Act claim should be denied.

2

A+PEL also challenges the partial summary judgment on its trade secret claim, as well as any other claims premised upon Defendants' use of A+PEL's allegedly confidential information. According to A+PEL, the district court erred because its Mentor Teacher training, Client List, and Member Database are protectible trade secrets.

A plaintiff may recover damages for the misappropriation of trade secrets under both DTSA and LUTSA. *See* 18 U.S.C. § 1836(b)(3)(B); LA. REV. STAT. § 51:1433. To prevail under either statute, a plaintiff must prove that a trade secret exists. *See CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022); *Comput. Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000). Under both statutes, information is not a "trade secret" unless it is subject to reasonable measures

No. 24-30640

to maintain its secrecy, not generally known or readily ascertainable, and has independent economic value derived from its secrecy. *See* 18 U.S.C. § 1839(3)(A)–(B); La. Rev. Stat. § 51:1431(4)(a)–(b).

i

Starting with A+PEL's Mentor Teacher training, A+PEL contends that there is a genuine dispute as to whether the training is a protectible trade secret because the record included evidence, in the form of Courville's declaration, showing that A+PEL incurred considerable expense to compile the information contained in the training.

A+PEL, however, has never asserted that, in addition to compiling this information, it took steps to maintain the secrecy of the Mentor Teacher training. Nor could it. As the district court observed, and A+PEL does not contest, the Mentor Teacher training is shared with participants who are not under any obligation to keep the materials confidential. Though A+PEL contends that Britt was subject to a confidentiality agreement contained in the proposed employee handbook, it makes no such claim as to the program's participants. "A disclosure of a trade secret to others who have no obligation of confidentiality" negates the existence of a trade secret. *See Sheets v. Yamaha Motor Corps., U.S.A.*, 849 F.2d 179, 183–84 (5th Cir. 1988).[4]

---

[4] *See also Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 541 (7th Cir. 2021) (holding that to the extent that company disclosed certain information to distributors of its product, the disclosure did not render the information not protectible because the distributors were bound by confidentiality agreements); *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 955–56 (8th Cir. 2023) (explaining that rental company customer lists, rental information, and marketing strategies qualify as trade secrets under DTSA in part because the rental company requires employees to sign a non-disclosure agreement).

15

No. 24-30640

ii

As to the Client List, A+PEL fails to clear the fundamental hurdle of demonstrating, with competent summary judgment evidence, that the list itself exists—much less that the list is a trade secret. During discovery, Defendants requested a copy of the Client List, and, in response, A+PEL submitted four documents: (1) a transaction list showing amounts paid to A+PEL by various schools and school districts on dates ranging from 2016 to 2022; (2) a document titled "2022 Fall LASAFAP Registrants," listing various individuals and their associated school districts, titles, and emails addresses; (3) an email titled "LASAFAP attendee list" sent from a school email address to twenty-seven recipients, with an attached document titled "Spring Registrant List" that provides the names, school districts, and email addresses of various individuals; and (4) an untitled document listing the "Course Name," "Reg Num," names, school districts, and email addresses of various individuals, all of whom have "2021 Fall LASAFAP Conference" listed under "Course Name."

In support of their motion for partial summary judgment, Defendants argued that none of these documents established the existence of the Client List because A+PEL only prepared the transaction list, and that list did not include any contact information, much less the "specific points of contact" A+PEL argued made the Client List a trade secret. Defendants further argued that because the other documents A+PEL provided were registration lists for a conference not sponsored by A+PEL, the information was generally known and not subject to reasonable efforts by A+PEL to maintain its secrecy, as the information was not in A+PEL's control. A+PEL's opposition did not address these arguments. Instead, it restated the contentions of Courville's declaration almost verbatim—though it did not cite to the declaration or any other record evidence—that it developed the Client List "through its unique position in the industry and through its many

years of experience and developing relationships with school districts," and "[s]ome of the information on the Client List is not generally known to the public and is not readily ascertainable."

On appeal, A+PEL again skirts the issue of whether it produced evidence that the Client List exists, focusing its arguments on whether the Client List, as described in Courville's declaration, constitutes a trade secret. When pressed at oral argument to identify where the Client list appears in the record, counsel asserted only that he believed it was in the record. This is not sufficient to justify reversal. We have often explained that "[o]nce a movant who does not have the burden of proof at trial makes a properly supported motion for summary judgment, the burden shifts to the nonmovant to show that the motion should not be granted" by "identify[ing] specific evidence in the record and articulat[ing] the precise manner in which that evidence supports her claim." *See, e.g.*, *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016) (citation modified). "Neither [this court] nor the district court have a duty to 'sift through the record in search of evidence to support' the nonmovant's opposition to summary judgment." *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). A+PEL's failure to respond with summary judgment evidence to Defendants' contention that the Client List does not exist is fatal to any trade secret claim premised upon the list.

iii

Unlike the Client List, the existence of the Member Database is undisputed. However, A+PEL likewise fails to present summary judgment evidence that the Member Database is a trade secret because it has not shown that the database consists of information that is not readily ascertainable and

that A+PEL derives independent economic value from the database's secrecy.

A+PEL argued before the district court that, contrary to Defendants' assertion in support of partial summary judgment, the Member Database could not be recreated by public records request because it included preferred email addresses—as distinct from public email addresses—which allow A+PEL to better advertise is training and services. It also contended that the database contained members' payment information, which enabled A+PEL to collect payment from its members.

On appeal, A+PEL seemingly abandons the argument that the Member Database is a trade secret because it contains payment information. Instead, A+PEL contends only that the district court disregarded the holdings in *Zoecon Industries, a Div. of Zoecon Corp. v. American Stockman Tag Co.*, 713 F.2d 1174 (5th Cir. 1983), and *Johnston v. Vincent*, 359 So. 3d 896 (La. 2023).

In *Zoecon*, we acknowledged that a customer list containing readily ascertainable names and addresses can be a trade secret if it also contains "other information" that "could be compiled only at considerable expense." 713 F.2d at 1180. We affirmed the district court's finding that Zoecon's customer list was a trade secret because in addition to the names and addresses of its customers, the list included information as to the type and color of product purchased, the date of purchase, and the amount purchased. *Id.* at 1180–81. Though *Zoecon* involved the interpretation of Texas's trade secret law, the Louisiana Supreme Court applied *Zoecon* in *Johnston* to hold that a customer list of petrochemical industry clients was a trade secret under LUTSA where the list contained not only customer names, but also information about company revenues per customer for hundreds of customers. *Johnston*, 359 So. 3d at 915.

No. 24-30640

The customer lists in *Zoecon* and *Johnston* are readily distinguishable from A+PEL's Member Database. Neither *Zoecon* nor *Johnston* involved customer lists of clients whose information—including their communications and allocation of funds—is a matter of public record, as is the case for Louisiana school districts.[5] *See* Louisiana Public Records Act, La. Rev. Stat. § 44:1(1)–(2). Although A+PEL contends that its members' "preferred" email addresses "may not [be] publicly available," it has not identified any evidence to support this contention by showing that such email addresses, indeed, are not publicly available.[6] *See Simmons v. Willcox*, 911 F.2d 1077, 1082 (5th Cir. 1990). The other information A+PEL's Member Database purportedly includes—the names of A+PEL members who attend its conferences and subscribe to its newsletter—would also be obtainable through a public records request to the extent that its members are educators for Louisiana school districts. Thus, the Member Database is not a trade secret because the information it contains is readily ascertainable, and A+PEL has not shown that the information can only be compiled at considerable expense.[7] *See Zoecon*, 713 F.2d at 1180; *Praeses, L.L.C. v. Bell*, 54,601 (La. App. 2 Cir. 6/29/22), 343 So. 3d 933 (upholding a finding that the phone system company's "methods, formulas, and

---

[5] A+PEL does not challenge the district court's finding that its customers are the school districts of Louisiana.

[6] The only record evidence A+PEL cites is Courville's declaration which, like A+PEL's brief, states that preferred email addresses "may not be publicly available."

[7] Even if A+PEL contends that it has not abandoned the argument that the Member Database also includes payment information, A+PEL has not sufficiently established that such information derives independent economic value by its secrecy. A+PEL contends that having its members' payment information allows it to collect payment, not that it obtains some economic advantage over competitors by keeping the payment information secret. Indeed, in his deposition, Courville identified the email addresses, not the payment information or other information, contained in the Member Database as the "operational information" that A+PEL argues was used to its detriment.

19

No. 24-30640

processes" were not protectible trade secrets where defendants established that the company's clients were "public government entities, whose contracts and agreements are matters of public record").

\* \* \*

Because A+PEL failed to establish the existence of a trade secret, the district court did not err in granting Defendants' motion for partial summary judgment as to A+PEL's DTSA and LUTSA claims.

3

As for A+PEL's LUTPA and breach of fiduciary duty claims stemming from Britt's use of its logo and confidential information, A+PEL asserts that the district court impermissibly required it to demonstrate damages for these claims with precision and, in doing so, relied on authority related to negligent breach of fiduciary duty rather than intentional breach of fiduciary duty.[8]

LUTPA makes it unlawful to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51:1405(A). LUTPA further permits parties who have suffered an "ascertainable loss of money or movable property" due to unfair or deceptive practices to recover damages. *Id.* § 51:1409(A). Accordingly, Louisiana courts have held that plaintiffs are required to establish damages to recover under LUTPA. *See, e.g., Johnson Constr. Co. v. Shaffer*, 46,999 (La. App. 2 Cir. 2/29/12), 87 So. 3d 203.

---

[8] A+PEL also contends that the district court's holding is overbroad insofar as it may prohibit the future introduction of evidence related to Britt's use of the logo and confidential information. But an unfavorable summary judgment ruling that results in dismissal of a claim with prejudice implicates claim and issue preclusion, not evidentiary rulings.

Likewise, to prevail on a claim for intentional breach of fiduciary duty, plaintiffs must prove that they suffered damages as a result of a defendant's breach. *See Brockman v. Salt Lake Farm P'ship*, 33-938 (La. App. 2 Cir. 10/4/00), 768 So. 2d 836, *writ denied*, 2000-3012 (La. 12/15/00), 777 So. 2d 1234.

Here, A+PEL identifies the following as "ascertainable losses" that support reversal: (1) the cost of Britt's hotel room during the Teacher Leader Summit, (2) lost profits from the Catahoula Leadership Academy, (3) lost profits from the West Feliciana School District presentation, and (4) Britt's paid personal days that she used to work on behalf of EDU20/20.

Regardless of whether these purported losses satisfy the damages element, A+PEL does not identify record evidence linking Britt's use of the logo or confidential information to these losses. *See Johnson*, 87 So. 3d at 209; *Brockman*, 768 So. 2d at 844. True, A+PEL argued before the district court that deposition testimony by Britt and the former superintendent of the Catahoula School District shows that Britt's use of the logo caused A+PEL to lose out on the Catahoula Leadership Academy and that she took a paid personal day to lead that presentation. But the record shows that EDU20/20 agreed to conduct the Catahoula Leadership Academy in April 2021, *before* any of the instances in which Britt used A+PEL's logo in EDU20/20 presentations. Therefore, it is a temporal impossibility that Britt's use of the logo caused any damages related to the Catahoula Leadership Academy presentation or her presentation at the Teacher Leader Summit. As to the West Feliciana School District presentation, A+PEL cites a withdrawn brief, not record evidence, to suggest that Britt's use of the logo at the Teacher Leader Summit resulted in EDU20/20, rather than

No. 24-30640

A+PEL, being selected for that presentation.[9] *See Skyline Corp.*, 613 F.2d at 1337.

Damages caused by a defendant's conduct is an essential element of a claim under LUTPA or for intentional breach of fiduciary duty. *See Johnson*, 87 So. 3d at 209; *Brockman*, 768 So. 2d at 844. Because A+PEL failed to identify any evidence that Britt's use of its logo or confidential information resulted in damages, the district court properly granted partial summary judgment on these claims. *See Lyons*, 964 F.3d at 302.

## B

We now turn to the denial of A+PEL's motion for partial summary judgment against Britt for violations of LUTPA and breach of fiduciary duty.

A+PEL's challenge focuses solely on the merits of the partial summary judgment motion, but the district court denied A+PEL's motion in an express declination to exercise supplemental jurisdiction over the state-law claims after disposing of all the federal claims in the case. However, a genuine dispute of material fact exists as to A+PEL's Lanham Act claim. *Supra* at 14. Therefore, we VACATE the dismissal of the state law claims, and REMAND to the district court for further consideration in light of the above.

## IV

For the foregoing reasons, we AFFIRM in part, REVERSE in part as to Defendants' motion for summary judgment on the Lanham Act claim, and VACATE in part as to the dismissal of the state law claims.

---

[9] Moreover, in its opposition before the district court, it did not identify lost profits from the West Feliciana School District as potential damages.

22

No. 24-30640

ANDREW S. OLDHAM, *Circuit Judge*, concurring:

The principal question presented is whether evidence of *actual* customer confusion is sufficient to show the *likelihood* of customer confusion under the Lanham Act. I agree with the majority that the answer is yes. I write separately to more fully explain why that is so and to show how this court should have resolved the trade secrets claim.

I

This case concerns a dispute between two educational companies in Louisiana. The first is the Associated Professional Educators of Louisiana ("A+PEL"). A+PEL is a 501(c)(3) nonprofit corporation that, among other things, provides training to teachers so they can get various certifications. For example, because Louisiana requires any teacher hosting a student teacher in his classroom to have a "mentor teacher" certificate, A+PEL offers a "Mentor Teacher" training program. ROA.1514. Like many organizations, A+PEL also maintains files so that it can offer courses and keep track of its clients. Two types of files are relevant here: (1) a list of the firm's clients, meaning those who took A+PEL courses and certifications; and (2) a database of A+PEL's members, meaning those who attended its conferences and subscribed to its newsletters.

The second entity is EDU20/20, LLC. Like A+PEL, EDU20/20 is a self-described "educational support organization" that "support[s] teachers and leaders in maximizing their curriculum for student success." ROA.1369–70. EDU20/20 also presents at conferences and offers various educational services to clients. *See ante* at 4-6.

The problem is that EDU20/20 was co-founded, co-owned, and run by Miranda Britt, who was also the Deputy Director of A+PEL. During her employment with A+PEL, Britt would use her days off to attend various industry conferences and pitch EDU20/20's services to school districts. In

23

some instances, her slide decks and presentations would feature the A+PEL logo and identify Britt as the "Deputy Director of A+PEL 2014-Present" rather than as a member of the EDU20/20 staff. *Compare* ROA.2299; 2388; 2391. So some potential clients would reach out to Britt via her A+PEL email rather than her EDU20/20 contact. During this period, Britt lied to her A+PEL colleagues about why she was missing work. For example, she said that she wanted to take time off to catch up from a recent vacation—but was really pitching EDU20/20.

Eventually, A+PEL discovered Britt's actions and sued EDU20/20, Britt, and her business partners. A+PEL's complaint had several causes of action: misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and the Louisiana Uniform Trade Secrets Act, La. Rev. Stat. § 51:1431 *et seq.*; impermissible solicitation of A+PEL's customers in violation of the Louisiana Unfair Trade Practices Act and in breach of fiduciary duty, La. Rev. Stat. § 51:1409 *et seq.*; civil conspiracy; and unfair competition and trademark infringement under the Lanham Act, 15 U.S.C. § 1125.

After discovery closed, each side filed motions for summary judgment. To make a long story short, the district court denied A+PEL's motions and granted the defendants' motions. As relevant here, it held that A+PEL's Lanham Act claims failed because A+PEL failed to demonstrate there was a genuine dispute that Britt's use of A+PEL's logo created the potential for customer confusion. Then it held that both of A+PEL's trade secrets claims also failed because they were based on accusations that its client lists, member database, and instructional materials were trade secrets, but the district court said that they were not.

## II

We review the grant of summary judgment *de novo. FDIC v. Myers*, 955 F.2d 348, 349 (5th Cir. 1992). Our task is to determine whether a genuine dispute of material fact exists. *Ibid.*; Fed. R. Civ. P. 56(a). We view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014).

Like the majority, (A) I believe that A+PEL created a genuine dispute of material fact on its Lanham Act claim. And, while I agree with the majority that summary judgment was appropriate on A+PEL's trade secrets claim, (B) I reach that result by a different path. In my view, A+PEL adequately demonstrated that its client list and member database were trade secrets. But there is no evidence that Britt and the defendants misappropriated those trade secrets here, so the district court's grant of summary judgment was proper.

## A

Start with the Lanham Act claim. For A+PEL to make out a claim under the Lanham Act, it must show that the defendants' use of a mark "creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the Defendants'" product. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998). This court has set out a non-exhaustive, eight-factor balancing test for when such a "likelihood of confusion" exists. *Id.* at 194; *see also Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008); *cf. Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 187 n.1 (5th Cir.) (Oldham, J., concurring) ("Such 'tests' have all the precision of a blunderbuss.") (citation omitted), *cert. denied sub nom. Springboards to Educ., Inc. v. IDEA Pub. Sch.*, 144 S. Ct. 183 (2023), *and cert.*

*denied*, 144 S. Ct. 191 (2023). The parties focus all their arguments on appeal on only one such factor: whether there is "evidence of actual confusion."[1] *Smack Apparel*, 550 F.3d at 478 (citation omitted).

So the question is whether A+PEL presented evidence of actual confusion. The answer is obviously yes—because it submitted declarations from two people who *were actually confused about Britt's affiliation with A+PEL.* The first such document is a declaration of a former employee of the Catahoula Parish School District, Dr. Tia Neal. Neal attended the "Catahoula Leadership Academy" in July 2021. ROA.1485. There, she saw Britt "deliver[] a presentation [on] behalf of EDU20/20." *Ibid.* And what happened in that presentation? Britt used "A+PEL's logo in her PowerPoint presentation." *Ibid.* Neal also attended an event called "Catahoula Forward" the same month. *Ibid.* And there, Britt again gave a presentation for EDU20/20. *Ibid.* And in that second presentation, Neal explained that Britt again used the A+PEL logo. *Ibid.* So, Neal said that "[b]ased on the foregoing, I assumed that there was an association and/or affiliation between A+PEL and EDU20/20." *Id.* at 1485–86. In other words, Neal was *actually confused* about the relationship between A+PEL and EDU20/20. How can proof of actual confusion be insufficient to withstand summary judgment as, well, evidence of actual confusion?

---

[1] Although the parties focus on whether there was actual confusion, many of the other factors cut in favor of A+PEL. For instance, the second factor asks courts to look at whether there is similarity between the original mark and the mark the defendant used. *Smack Apparel*, 550 F.3d at 478. And here, the defendant used the original mark. So that factor obviously cuts in favor of A+PEL. So do both the third factor, which considers the similarity of products or services, and the fourth factor, which considers whether the same purchasers buy the items. *Ibid.* Here, A+PEL and EDU20/20 offer nearly identical educational services to the same educational clients.

No. 24-30640

And Neal's declaration does not stand alone. A+PEL also offered the declaration of Torrence Williams, who was an employee of the West Feliciana Parish School District during the events in question. ROA.1407. Williams attended a presentation Britt gave to the West Feliciana Parish School District. *Ibid.* And what happened at that presentation? Williams says that "Miranda Britt said she worked for A+PEL," and that he "observed" Britt use "A+PEL's logo in her PowerPoint presentation." *Ibid.* Because of this, Williams "assumed that A+PEL endorsed the presentation." *Ibid.* In other words, Willaims—like Neal—was mistaken in thinking that A+PEL approved of Britt's conduct. That's textbook confusion. And, just like the Neal declaration, it's sufficient evidence to survive the defendants' motion for summary judgment.[2]

The majority labels the declarations "self-serving." *Ante* at 13. That is curious. After all, litigating positions are obviously self-serving, and every party in a case presumably says what it says to win. *See, e.g.*, *Thomas v. Tewis*, No. 22-30662, 2024 WL 841229, at *1 (5th Cir. Feb. 28, 2024) (per curiam) (denying qualified immunity based on the plaintiff's affidavit). And we routinely credit reports by hired experts even though they are obviously put forward by one party (plaintiff or defendant) with a particular agenda (to win). *Cf. Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In my

---

[2] True, Williams also mentioned that he "overheard other attendees discuss Miranda Britt's affiliation with A+PEL." ROA.1407. So one might read his confusion as only *partly* stemming from the logo, and *partly* stemming from what he heard (which would not involve the A+PEL trademark). Even so, his declaration is still evidence of confusion. Why? "[B]ecause Plaintiff has presented some relevant evidence of actual confusion, a reasonable jury could conclude that this digit weighs in its favor." *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 627 (5th Cir. 2023). And this is enough to preclude summary judgment, as evidence of actual confusion is "the best evidence of a likelihood of confusion." *Appliance Liquidation Outlet, LLC v. Axis Supply Corp.*, 105 F.4th 362, 381 (5th Cir. 2024) (citation omitted).

view, the fact that A+PEL put these declarations forward as evidence in support of its view is neither here nor there.

If all that were not enough, there is yet more evidence of confusion. An attendee at one of Britt's presentations emailed Britt at her A+PEL email address—not an EDU20/20 address—to ask about training by EDU20/20. ROA.1315–16. Britt later redirected this email to an EDU20/20 staffer. ROA.1317. As this court has long recognized, misdirected inbound inquiries are "indicia of actual confusion." *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173 (5th Cir. 1986). Here, there was such an indicum, since at least one person was confused about whether Britt was speaking on behalf of A+PEL or EDU20/20.

At bottom, Britt gave several confusing presentations, which predictably led to several people being (predictably) confused. This pattern is well-documented and contained in the record. And it easily constitutes sufficient evidence to survive the defendants' motion for summary judgment on the Lanham Act claim.

B

Second, the trade secrets claim. *See* 18 U.S.C. § 1836(b)(1); LA. REV. STAT. § 51:1433. Under both the federal and state trade secrets schemes, to make out a claim for misappropriation of trade secrets, a plaintiff must show that (1) a trade secret exists, and (2) the defendant misappropriated the secret.

Although the majority and I agree that A+PEL's trade secrets claims fail, we have different paths to that conclusion. The majority says there are no trade secrets. I think there are, but that there was no misappropriation.

No. 24-30640

1

It's clear from the record that this case concerns two valid A+PEL trade secrets: a client list and membership database.[3] A trade secret exists under the relevant federal and state laws if the firm has subjected it to reasonable measures to maintain its secrecy, the information is not generally known or readily ascertainable, and it has independent economic value derived from its secrecy. *See* 18 U.S.C. § 1839(3)(A)–(B); La. Rev. Stat. § 51:1431(4)(a)–(b). Courts often look to whether the information in question "could be compiled only at considerable expense." *Zoecon Indus., a Div. of Zoecon Corp. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983) (applying Texas law); *see Johnston v. Vincent*, 359 So. 3d 896, 915 (La. 2023) (citing *Zoecon* favorably).

A+PEL met these standards for both the client list and membership database. Start with the client list. For one, the list was obviously protected information that was not disclosed to the public. And a close reading of A+PEL's evidence reveals that it was not generally known or readily ascertainable, and it had economic value. A+PEL produced a declaration from its director that implies not all of A+PEL's customers are public school districts. ROA.1535 (explaining that A+PEL's customers merely *include* public school districts). So, by including private schools, the list includes information that is not available through public means, such as public records requests. *See ibid.*; *see also* Gray Br. at 8. And the declaration states that the client list contained "the identities of specific point-of-contacts [sic] and related information," that A+PEL got through "years of experience and developing relationships with the school district[s]." ROA.1535. That

_____

[3] I agree with the majority that A+PEL's Mentor Teacher Training was not a valid trade secret. *See ante* at 15.

information, which does not appear to be publicly available, is exactly the kind of information that could "be compiled only at considerable expense." *Zoecon*, 713 F.2d at 1179. So it has independent economic value because it includes the specific and hard-to-compile lists of contacts necessary for A+PEL's core business. Thus, by my reading, there is at the very least a genuine dispute of material fact about whether the client list was a trade secret.

In response, the majority says that the client list never even existed in the first instance, so it cannot be a trade secret. *See ante* at 16–17. But that is wrong, particularly at the summary judgment stage. A+PEL provided a declaration stating that "[o]ver the years, A+PEL has developed and compiled a number of lists of its customers, including customer school districts[,] with the identities of specific point-of-contacts [sic] and related information designated for each as well as lists of other types of customers such as mentor teacher clients." ROA.1535. That is precisely the kind of "specific evidence in the record" adequate to support A+PEL's claim that it had a specific trade secret: hard-to-compile lists of clients. *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

Next, consider the member database. The member database covers information that, as with the client list, was protected and not disclosed to the public, was not generally known or readily ascertainable, and had economic value. The list is compiled of "privately submit[ted] . . . application[s]," which are obviously not public. ROA.1535. What's more, the information in the database is "secret," and the office storing the information is secured. ROA.1536. And the information is not generally known to the public. Why? The member database includes "names and contact details of principals attending A+PEL conferences, the names and contact details of individuals signing up for the A+PEL newsletter, and the names and contact

details of individuals who have attended A+PEL conferences hosted by other organizations." ROA.1535–36. Many of these individuals' details were not available on Louisiana's public servers because they "reside (or have resided) outside of the State." ROA.1536. Finally, "A+PEL has a competitive advantage and derives independent economic value from the Member Database because it receives membership dues from its members and is able to directly market its services to its members based upon the confidential information contained" in the database. ROA.1536. So all the elements of a trade secret are met for the membership database, too.

In response, the majority argues that the member database is not a protected trade secret because it contains publicly available information. *Ante* at 19. The theory seems to work like this: the database is comprised of people who work for public schools, and because someone from a public school's email is on the internet, this whole set of emails, along with other contact information and A+PEL's attendance information, is worth nothing. I do not find that logic compelling. The database contained information about individuals who were out-of-state. So one could not simply trawl the internet for email addresses for every school administrator in Louisiana, for example, and get the same data. But even setting that quibble aside, one need not be a data scientist to see that contact information and attendance data (which is also not publicly available) present a valuable trail that A+PEL can monetize. Thus, the member database is clearly a trade secret—one that A+PEL has gone to some length to protect.

2

Nonetheless, I agree that A+PEL could not survive the defendants' motion for summary judgment because there is no genuine dispute about whether the defendants misappropriated the client list or member database. To establish that critical element, A+PEL must show that "the defendant

*used* the trade secret without authorization." *CAE Integrated, LLC v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (quotation omitted); *see also* 18 U.S.C. § 1839(5)(B) (defining "misappropriation" to include "*disclosure or use* of a trade secret of another without express or implied consent" (emphasis added)). As best I can tell, A+PEL has offered no evidence that suggests Britt or the defendants disclosed the client list. And as to the member database, while A+PEL has shown that Britt accessed the member database before she resigned, it has not shown that she *used* the member database in any way. So, A+PEL cannot survive the defendants' motion for summary judgment on this claim.

*    *    *

In sum, I agree that we should vacate the district court's dismissal of the Lanham Act claim. And, while I agree with the majority that we should affirm the dismissal of the trade secrets claim, I take a different path to that result.